**IN THE UNITED BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re:<br><br>TWC LIQUIDATION TRUST,<br><br>              Debtor. | Chapter 11<br><br>Case No. 18-10601 (MFW) |
| Dean A. Ziehl, in his capacity as trustee of the TWC LIQUIDATION TRUST,<br><br>              Plaintiff,<br><br>    v.<br><br>ANDREW R. VARA, in his capacity as the United States Trustee for Region 3; RAMONA D. ELLIOTT, in her capacity as Acting Director of the United States Trustee Program; and the UNITED STATES TRUSTEE PROGRAM,<br><br>              Defendants. | Adv. Proc. No. 22-50476 |

**MEMORANDUM OF LAW IN SUPPORT OF
LIQUIDATION TRUSTEE'S MOTION FOR SUMMARY JUDGMENT
FOR A REFUND OF OVERPAID UNITED STATES TRUSTEE PROGRAM FEES**

**PACHULSKI STANG ZIEHL & JONES LLP**
Jason H. Rosell (admitted *pro hac vice*)
Colin R. Robinson (DE Bar No. 5524)
Gail S. Greenwood (admitted *pro hac vice*)
919 North Market Street, 17th Floor
Wilmington, DE 19899 (Courier 19801)
Tel: 302-652-4100
Email: jrosell@pszjlaw.com
       crobinson@pszjlaw.com
       ggreenwood@pszjlaw.com

*Attorneys for Dean A. Ziehl, solely in his capacity as
Trustee of the TWC Liquidation Trust*

# TABLE OF CONTENTS

**Page**

I. STATEMENT OF NATURE AND STATUS OF PROCEEDING ............................................. 1

II. SUMMARY OF ARGUMENT .......................................................................................... 2

III. STATEMENT OF MATERIAL FACTS TO WHICH THERE IS NO GENUINE
DISPUTE ........................................................................................................................... 3

    A.    The Debtors' Chapter 11 Cases and Confirmed Plan .............................................. 3

    B.    This Adversary Proceeding ..................................................................................... 4

    C.    Increased U.S. Trustee Quarterly Fee Schedule ..................................................... 6

    D.    The Supreme Court Declares That The Excess Fees Are Unconstitutional ............ 8

    E.    Excess Fees Imposed in These Chapter 11 Cases ................................................... 9

IV. ARGUMENT .................................................................................................................... 10

    A.    Summary Judgment Standard ............................................................................... 10

    B.    The Liquidation Trust Is Entitled To A Refund As A Matter Of Law .................. 11

        1.    Granting Prospective Relief by Raising BA Program Fees Would
Not Remedy Damages to the Liquidation Trust ....................................... 12

        2.    Refunding The Excess Fees Is The Proper Relief .................................... 13

            (i)    The Liquidation Trust Is Entitled To A Declaration That It
Is Entitled To Receive A Refund Of The Excess Fees ................. 13

            (ii)   The Excess Fees Are An Avoidable Transfer Of Property
Of The Estate ................................................................................ 14

V. CONCLUSION ................................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .................................................................. 10

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................................. 10

*In re Clinton Nurseries, Inc.*, 998 F.3d 56 (2d Cir. 2021) ...................................................... 2, 8, 13

*In re John Q. Hammons Fall 2006, LLC*, 15 F.4th 1011 (10th Cir. 2021) ............................. 2, 8, 13

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ............................ 11

*McKesson Corp. v. Div. of Alcoholic Beverages & Tobacco*, 496 U.S. 18 (1990) ....................... 13

*Montemayor v. City of San Antonio*, 276 F.3d 687 (5th Cir. 2001) ............................................. 11

*Pitta as Liquidation Trustee v. Vara*, No. 22-50416-JTD (Bankr. D. Del. Nov. 26, 2022) ......... 12

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000) ............................................... 11

*Siegel v. Fitzgerald*, 142 S. Ct. 1770 (2022) ........................................................... 2, 6, 7, 8, 10, 11

*Siegel v. United States Tr. Program (In re Circuit City Stores, Inc.)*,
    2022 Bankr. LEXIS 3544 (Bankr. E.D. Va. Dec. 15, 2022) .......................... 2, 6, 10, 12, 13, 14

*U.S. ex rel. Anderson v. N. Telecom, Inc.*, 52 F.3d 810 (9th Cir. 1995) ....................................... 11

**Statutes**

11 U.S.C. § 105(a) ........................................................................................................................ 14

11 U.S.C. § 106(a)(2) ..................................................................................................................... 5

11 U.S.C. § 549 .............................................................................................................................. 2

11 U.S.C. § 549(a) ........................................................................................................................ 14

11 U.S.C. § 549(d) ........................................................................................................................ 15

11 U.S.C. § 550 .............................................................................................................................. 2

11 U.S.C. § 550(a) ........................................................................................................................ 14

11 U.S.C. § 1142(b) ...................................................................................................................... 14

28 U.S.C. § 157 .............................................................................................................................. 5

28 U.S.C. § 157(b)(2)(A) ............................................................................................................... 5

28 U.S.C. § 586 .............................................................................................................................. 6

28 U.S.C. § 589a(b)(5) ................................................................................................................... 8

28 U.S.C. § 1334 ............................................................................................................................ 5

DOCS_NY:46936.11 92767/002

28 U.S.C. § 1408 ................................................................................................................ 5
28 U.S.C. § 1409 ................................................................................................................ 5
28 U.S.C. § 1930(a)(6) ............................................................................................... 3, 7, 8
28 U.S.C. § 1930(a)(6)(A) ................................................................................................. 6
28 U.S.C. § 1930(a)(7) ...................................................................................................... 7
28 U.S.C. § 2201(a) ......................................................................................................... 14
28 U.S.C. § 2412(d) .......................................................................................................... 2

**Rules**

Fed. R. Bankr. P. 3020(d) ................................................................................................. 5
Fed. R. Civ. P. 56(a) ....................................................................................................... 10

**Constitutional Provisions**

U.S. Const., Art. I, § 8, cl. 4 ........................................................................................ 8, 11

**Other Authorities**

Bankruptcy Judgeship Act of 2017, Pub. L. No. 115-72 § 1004, 131 Stat. 1224 (Oct. 26, 2017) . 7
Consolidated Appropriations Act, Pub. L. No. 116-6, 133 Stat. 13 (Feb. 15, 2019) ...................... 8
*United States Trustee Program Policy and Practices Manual*, Ch. 3-9.6.2.4 ............................... 8

DOCS_NY:46936.11 92767/002

Dean A. Ziehl, solely in his capacity as trustee (the "Liquidation Trustee") of the TWC Liquidation Trust (the "Liquidation Trust"), which was formed pursuant to the *Fifth Amended Joint Chapter 11 Plan of Liquidation* of The Weinstein Company Holdings LLC and its affiliated debtors (collectively, the "Debtors"), submits this memorandum of law, together with the declaration of Kyle Herman dated January 27, 2023 (the "Herman Declaration"), in support of his motion for summary judgment (the "Motion").

## I.
## STATEMENT OF NATURE AND STATUS OF PROCEEDING

1. The Liquidation Trustee is the authorized representative of the Liquidation Trust. The Liquidation Trustee is responsible for, *inter alia*, implementing the provisions of the *Fifth Amended Joint Chapter 11 Plan of Liquidation* [Bankr. Docket No. 3182] (the "Plan"),[1] which includes pursuing, prosecuting, and settling causes of action, making distributions to creditors, and making quarterly fee payments to the UST Program (defined below). *See* Plan § 6.7; *see also Order Confirming Plan Proponents' Fifth Amended Joint Chapter 11 Plan of Liquidation* [Bankr. Docket No. 3203] (the "Confirmation Order") at ¶¶ 16–17.

2. On December 12, 2022, the Liquidation Trustee initiated this adversary proceeding (the "Adversary Proceeding") and filed the *Amended Complaint* [Adv. Proc. Docket No. 4] (the "Complaint") on December 30, 2022. The Complaint asserts that the Liquidation Trust is due a refund of excess quarterly fees (the "Excess Fees") paid by the Debtors to the United States Trustee from January 1, 2018 through September 30, 2018 (*i.e.*, the first, second, and third quarters of 2018) in the amount (as corrected herein) of $971,624.13.

---

[1] A capitalized term used but not defined herein shall have the meaning ascribed to it in the Plan.

3. The United States Supreme Court declared the imposition of the Excess Fees as unconstitutional in *Siegel v. Fitzgerald*, 142 S. Ct. 1770 (2022) ("*Siegel I*").[2]

4. There are no issues of material fact. The sole issue is the appropriate remedy for the Debtors' payment of the UST Program's unconstitutional fees. Accordingly, this matter is ripe for summary judgment. Moreover, the Liquidation Trustee brings this Motion at this procedural posture of the Adversary Proceeding, in part, to expedite distributions to the Debtors' creditors.

5. The Liquidation Trustee states that, upon the Court's determination that the Liquidation Trust is entitled to a refund of the Excess Fees, he intends to seek an award of costs, fees, and other expenses, including attorneys' fees, under the Equal Access to Justice Act, 28 U.S.C. § 2412(d), pursuant to the procedure set out therein.

## II.
## SUMMARY OF ARGUMENT[3]

6. By this action, the Liquidation Trustee seeks a declaration that the Liquidation Trust is entitled to a refund of the Excess Fees, as well as recovery of such fees pursuant to sections 549 and 550 of title 11 of the United States Code (the "Bankruptcy Code").

7. Throughout their chapter 11 cases, certain of the Debtors paid statutorily determined quarterly fees to the United States Trustee Program (the "UST Program").

---

[2] Following the Supreme Court's ruling in *Siegel I* that the Amendment (defined below) was unconstitutional, the Second Circuit and Tenth Circuit have held that a chapter 11 debtor is entitled to a refund of its overpayments to the U.S. Trustee. *See In re Clinton Nurseries, Inc.*, 998 F.3d 56, 70 (2d Cir. 2021), *reinstated on remand*, 53 F.4th 15 (2d Cir. 2022); *In re John Q. Hammons Fall 2006, LLC*, 15 F.4th 1011, 1026 (10th Cir. 2021), *reinstated on remand*, No. 20-3203, 2022 U.S. App. LEXIS 22859 (10th Cir. Aug. 15, 2022). In *Siegel* itself, on remand, the bankruptcy court held that the U.S. Trustee was obligated to refund the excess fees at issue. *Siegel v. United States Tr. Program (In re Circuit City Stores, Inc.)*, Nos. 08-35653-KRH, 19-03091-KRH, 2022 Bankr. LEXIS 3544, at *19 (Bankr. E.D. Va. Dec. 15, 2022) ("*Siegel II*").

[3] A capitalized term used but not defined in this Summary of Argument shall have the meaning ascribed to it in the balance of this memorandum of law, and all facts adverted to herein are supported by record citations in the balance of this memorandum of law.

2

8.      The Bankruptcy Judgeship Act of 2017 included an amendment to 28 U.S.C. § 1930(a)(6) (the "Amendment"), effective January 1, 2018, which modified the UST Program fee schedule. The Amendment increased quarterly fees payable to the UST Program by up to more than eight times, solely in districts that follow the UST Program but not in districts that participate in the Bankruptcy Administrator Program (the "BA Program"). Pursuant to the Amendment, the Debtors paid the UST Program $971,624.13 more than they otherwise would have prior to the Amendment. In 2022, the United States Supreme Court held in *Siegel I* that the Amendment is unconstitutional. As a result, the TWC Liquidation Trust is entitled to an immediate refund of the amount overpaid by the Debtors (*i.e.*, the Excess Fees).

9.      There are no facts at issue here and the law is unequivocal. The amounts that the Debtors paid to the UST Program are known and not subject to dispute. The calculation of the overpayment – the difference between (i) the amount charged by the UST Program and paid by the Debtors, and (ii) the amount that the Debtors would have paid under the lower fee schedule of the BA Program – is a math problem and readily calculable. Herman Decl. ¶ 13. The imposition of these excess fees, and the resulting overpayment, has been held by the United States Supreme Court to be unconstitutional. The Liquidation Trustee's entitlement to a refund follows as a matter of logic and law. The Court should grant the Motion.

### III.
### STATEMENT OF MATERIAL FACTS
### TO WHICH THERE IS NO GENUINE DISPUTE

**A.      The Debtors' Chapter 11 Cases and Confirmed Plan**

10.     On March 19, 2018 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court") [Bankr. Docket No. 1].

3

11. The Liquidation Trustee is the authorized representative of the Liquidation Trust, as more fully set forth in the Plan. The Liquidation Trustee is responsible for, *inter alia*, implementing the provisions of the Plan, pursuing, prosecuting, and settling causes of action, making distributions to creditors, and making quarterly fee payments to the UST Program. *See* Plan § 6.7; *see also* Confirmation Order ¶¶ 16–17.

12. On March 28, 2018, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee") [Bankr. Docket No. 122].

13. On January 20, 2021, the Debtors and the Committee jointly filed the Plan [Bankr. Docket No. 3182]. On January 26, 2021, the Court entered the Confirmation Order [Bankr. Docket No. 3203]. The Plan became effective on February 18, 2021 [Bankr. Docket No. 3258].

14. Pursuant to the Plan and accompanying Liquidation Trust Agreement, the Liquidation Trustee was appointed as the successor-in-interest to, and the representative of, the Debtors' estates for the retention, enforcement, settlement, or adjustment of all claims and rights, known and unknown, and all interests belonging to the Debtors or their estates that arose prior to the Effective Date, except in connection with any proceeding relating to Sexual Misconduct Claims as defined in the Plan. Plan § 6.3. Under the Plan, all of the Debtors' right, title, and interest in and to all of the Liquidation Trust Assets, including claims and Causes of Action, were automatically transferred to the TWC Liquidation Trust. *Id.* at § 6.5; *see also* Confirmation Order ¶¶ 16–17.

**B.     This Adversary Proceeding**

15. The Liquidation Trustee initiated this Adversary Proceeding on December 12, 2022 [Adv. Proc. Docket No. 1] and filed and served the Complaint on December 30, 2022 [Adv. Proc. Docket No. 4, 5].

4

16. The United States District Court for the District of Delaware has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. § 1334, which was referred to this Court under 28 U.S.C. § 157 pursuant to the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.  This Adversary Proceeding constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

17. The Court maintains jurisdiction over this Adversary Proceeding pursuant to the Confirmation Order, which states that the Court "shall retain jurisdiction over all matters arising out of, arising under, and related to, the Chapter 11 Cases to the fullest extent as is legally permissible, including jurisdiction over the matters set forth in Section 13 [Retention of Jurisdiction] of the Plan."  Confirmation Order ¶ 35.  In addition, the Court retained jurisdiction to issue any order necessary to administer the estate pursuant to Federal Rule of Bankruptcy Procedure 3020(d).

18. Pursuant to section 106 of the Bankruptcy Code, each of the Defendants' sovereign immunity has been abrogated with respect to the claims asserted herein, and this Court has jurisdiction to "hear and determine any issue arising with respect to" such claims.  11 U.S.C. § 106(a)(2).

19. The Liquidation Trustee has consented to entry of final orders or a final judgment by this Court in this Adversary Proceeding.

20. Defendant Andrew R. Vara is the United States Trustee ("Region 3 Trustee") for Region 3, a regional division of the UST Program that includes the District of Delaware and is responsible for overseeing the operations of the UST Program in Region 3.

5

21. Defendant Ramona D. Elliott is the Acting Director ("Acting Director") of the UST Program.

22. The UST Program is a component of the United States Department of Justice, an agency of the Executive Branch of the United States Government, and it is responsible for overseeing the administration of bankruptcy cases pursuant to 28 U.S.C. § 586. *See Siegel I*, 142 U.S. at 1776. The UST Program, Region 3 Trustee, and Acting Director are collectively referred to herein as the "Defendants."

**C.    Increased U.S. Trustee Quarterly Fee Schedule**

23. The UST Program is a component of the United States Department of Justice and is responsible for overseeing the administration of bankruptcy cases in 88 of the 94 judicial districts of the United States. *See id.* Six judicial districts located in Alabama and North Carolina are overseen by the BA Program, which is part of the judicial branch and is overseen by the Administrative Office of the United States Courts (the "Administrator Districts"). *Id.* The Administrative Office of the United States Courts is supervised by the Judicial Conference of the United States. *See id.*

24. In the judicial districts overseen by the UST program, including the District of Delaware (the "UST Districts"), chapter 11 debtors are required to pay quarterly fees to the UST Program in accordance with 28 U.S.C. § 1930, which provides that, among other fees, "a quarterly fee shall be paid to the United States trustee, for deposit in the Treasury, in each case under chapter 11 of title 11 . . . for each quarter (including any fraction thereof) until the case is converted or dismissed, whichever occurs first." 28 U.S.C. § 1930(a)(6)(A). The quarterly fees are based on the total quarterly "disbursements" made by the applicable debtor in each quarter. *See id.*; *see also Siegel II*, 2022 Bankr. LEXIS 3544, at *4–5. In particular, the schedule for fee determination is

bracketed, with the highest and relevant brackets being for quarterly disbursements in excess of $1 million.

25. In October 2017, Congress amended 28 U.S.C. § 1930(a)(6) to increase the quarterly fees payable to the UST Program in chapter 11 cases. The Amendment increased the maximum fee per debtor (for quarterly disbursements in excess of $25 million) by over 800%, from $30,000 to $250,000. *See* Bankruptcy Judgeship Act of 2017, Pub. L. No. 115-72 § 1004, 131 Stat. 1224, 1232 (Oct. 26, 2017). The relevant fee schedules are presented on the U.S. Department of Justice's website within the UST Program area, https://www.justice.gov/ust/chapter-11-quarterly-fees. A copy of the UST Program's webpage setting out the fee schedules is attached to the Herman Declaration as Exhibit 1.

26. The Amendment imposed the quarterly fee increase *only* in UST Program Districts. The quarterly fees did not initially apply in the Administrator Districts (*i.e.*, Alabama and North Carolina) because 28 U.S.C. § 1930(a)(7) provided that "the Judicial Conference of the United States ***may require*** the debtor in a case under chapter 11 of title 11 to pay fees equal to those imposed by paragraph (6) of this subsection." 28 U.S.C. § 1930(a)(7) (2019) (amended 2021) (emphasis added).[4] In other words, additional steps were required to be taken by the Judicial Conference of the United States to effectuate the increased quarterly fees in the Administrator Districts.

27. Effective January 1, 2018, the UST Program assessed the increased quarterly fees in all cases pending in UST Districts. The BA Program did not. *See Siegel I*, 142 S.Ct. at 1777.

---

[4] A subsequent amendment, effective January 12, 2021, mandated a uniform fee increase in Administrator Districts by changing 28 U.S.C. § 1930(a)(7) to state that the Judicial Conference "shall" require the debtor in Administrator Districts to pay fees equal to those imposed under 28 U.S.C. § 1930(a)(6).

7

**D.     The Supreme Court Declares That The Excess Fees Are Unconstitutional**

28.     On June 6, 2022, the United States Supreme Court unanimously held that the Amendment was unconstitutional because it exempted debtors from the Administrator Districts from the quarterly fee increase and thereby violated the uniformity requirement of the Bankruptcy Clause (U.S. Const., Art. I, § 8, cl. 4). *Siegel I*, 142 S. Ct. at 1782–83.[5]

29.     Fees paid and collected pursuant to 28 U.S.C. § 1930(a)(6) are deposited in the United States Trustee System Fund, which is administered by the UST Program. *See* 28 U.S.C. § 589a(b)(5).

30.     In appropriating funds for the UST Program, Congress made the amounts in the United States Trustee System Fund available for the payment of refunds to depositors such as the Debtors and the Liquidation Trustee, as follows:

> [N]otwithstanding any other provision of law, deposits to the United States Trustee System Fund and amounts herein appropriated shall be available in such amounts as may be necessary to pay refunds due depositors[.]

Consolidated Appropriations Act, Pub. L. No. 116-6, 133 Stat. 13, 103–04 (Feb. 15, 2019).

31.     Moreover, Chapter 3-9.6.2.4 of the *United States Trustee Program Policy and Practices Manual* (the "UST Manual") requires the UST Program to follow "[p]ayment refund procedures established by the [Executive Office of the United States Trustee] . . . in the event that overpayment of quarterly fees necessitates a refund." UST Manual, Ch. 3-9.6.2.4.

---

[5]  Following the Supreme Court's ruling in *Siegel I* that the Amendment was unconstitutional, the Second Circuit and Tenth Circuit have held that a chapter 11 debtor is entitled to a refund of its overpayments to the U.S. Trustee. *See Clinton Nurseries*, 53 F.4th at 29 (reinstating a pre-*Siegel I* decision on remand and directing the bankruptcy court to provide the debtor with a refund of excess fees); *John Q. Hammons Fall 2006*, 2022 U.S. App. LEXIS 22859, at *6 (reinstating a pre-*Siegel I* decision on remand and directing the calculation and refund of overpaid fees).

8

32. Because the Supreme Court held the Amendment to be unconstitutional, the Excess Fees paid by the Debtors and the Liquidation Trustee were unlawfully charged by the UST Program, and the Liquidation Trust is entitled to a refund of such Excess Fees.

### E. Excess Fees Imposed in These Chapter 11 Cases

33. From the Petition Date through the effective date of the Plan, the Debtors paid quarterly fees on disbursements based on the fee schedule set forth in the Amendment. Herman Decl. ¶ 8.

34. Certain of the Debtors paid the Excess Fees, totaling $971,624.13 in quarterly fees incurred during the first, second, and third quarters of 2018 under the amended quarterly fee schedule,[6] as compared to applicable fees under the pre-Amendment schedule. Herman Decl. ¶ 17. The Excess Fees paid by the Debtors reflect overpayments that are attributable solely to the Amendment. The Excess Fees paid by the Debtors for each quarter were:

A. For the First Quarter of 2018 (*Id.* ¶ 14):

| Debtor Name | Quarterly Disbursements | Calculated Fee | Prior Fee | Excess Fees |
|---|---|---|---|---|
| TWC Domestic LLC | 2,507,550.00 | 25,075.50 | 9,750.00 | 15,325.50 |
| The Weinstein Company LLC | 1,421,737.00 | 14,217.37 | 6,500.00 | 7,717.37 |
| TWC Production LLC | 614,339.00 | 4,875.00 | 4,875.00 | - |
| Weinstein Television LLC | 2,813.00 | 325.00 | 325.00 | - |
| **Total:** | **$ 4,546,439.00** | **$ 44,492.87** | **$ 21,450.00** | **$ 23,042.87** |

B. For the Second Quarter of 2018 (*Id.* ¶ 15):

| Debtor Name | Quarterly Disbursements | Calculated Fee | Prior Fee | Excess Fees |
|---|---|---|---|---|
| TWC Domestic LLC | 61,290,308.00 | 250,000.00 | 30,000.00 | 220,000.00 |
| The Weinstein Company LLC | 39,276,966.00 | 250,000.00 | 30,000.00 | 220,000.00 |
| TWC Production LLC | 16,042,495.00 | 160,424.95 | 20,000.00 | 140,424.95 |
| Weinstein Television LLC | 6,221,820.00 | 62,218.20 | 13,000.00 | 49,218.20 |
| Spy Kids TV Borrower, LLC | 2,047,269.00 | 20,472.69 | 9,750.00 | 10,722.69 |
| TWC Mist LLC | 1,757,563.00 | 17,575.63 | 6,500.00 | 11,075.63 |
| **Total:** | **$ 126,636,421.00** | **$ 760,691.47** | **$ 109,250.00** | **$ 651,441.47** |

---

[6] Only the Debtors that paid Excess Fees to the UST Program are identified herein.

C.   For the Third Quarter of 2018 (*Id.* ¶ 16):

| Debtor Name | Quarterly Disbursements | Calculated Fee | Prior Fee | Excess Fees |
|---|---|---|---|---|
| TWC Domestic LLC | 7,432,542.00 | 74,325.42 | 13,000.00 | 61,325.42 |
| The Weinstein Company LLC | 31,248,991.00 | 250,000.00 | 30,000.00 | 220,000.00 |
| TWC Production LLC | 990,519.00 | 4,875.00 | 4,875.00 | - |
| Weinstein Television LLC | 2,556,437.00 | 25,564.37 | 9,750.00 | 15,814.37 |
| **Total:** | **$ 42,228,489.00** | **$ 354,764.79** | **$ 57,625.00** | **$ 297,139.79** |

35.   It was not until October 1, 2018 that BA Program fees were increased to match the UST Program fee schedule for new cases in BA Program districts. *Siegel I*, 142 S. Ct. at 1777; *Siegel II*, 2022 Bankr. LEXIS 3544, at *6.

### IV.   ARGUMENT

**A.   Summary Judgment Standard**

36.   Summary judgment should be granted "if the movant shows that there is no ***genuine*** dispute as to any ***material*** fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphasis added). A fact is "material" if, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Id.*

37.   The movant "bears the initial responsibility of informing the . . . court of the basis for its motion" and identifying what "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After the moving party carries this burden, the "party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 256. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for

10

trial,'" and summary judgment is properly granted. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

38. Summary judgment is "'not a disfavored procedural shortcut,' but [rather is] the 'principal tool[] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources.'" *U.S. ex rel. Anderson v. N. Telecom, Inc.*, 52 F.3d 810, 815 (9th Cir. 1995) (quoting *Celotex*, 477 U.S. at 327). While the Court may not make credibility determinations or weigh the evidence, pursuant to *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000), "*Reeves* does not require [the Court] to reject the plainly obvious." *Montemayor v. City of San Antonio*, 276 F.3d 687, 693 (5th Cir. 2001).

**B.     The Liquidation Trust Is Entitled To A Refund As A Matter Of Law**

39. Here, for the first, second, and third quarters of 2018, the Debtors paid Excess Fees of $971,624.13 in compliance with the Amendment, which the Supreme Court subsequently found to be unconstitutional. Herman Decl. ¶ 17. The Excess Fees exceeded the amount of quarterly fees that the UST Program was lawfully permitted to charge and that the Debtors and Liquidation Trustee were legally required to pay.

40. The Supreme Court has unequivocally held that the UST Program fee schedule in effect in 2018 was a violation of the uniformity requirement of the Bankruptcy Clause. *Siegel I*, 142 S. Ct. at 1782–83. Because the lower court had not addressed the issue of remedies for overpayment, the Supreme Court remanded the case for the lower courts to consider. *Id.* at 1783.

41. The bankruptcy court, on remand in *Siegel II*, and the post-*Siegel I* appeals court cases are unanimous that debtors are entitled to refunds of excess fees paid. In *Siegel II*, on remand,

11

the bankruptcy court found that the debtor was entitled to a refund under applicable non-bankruptcy law – essentially, constitutional remedies.

### 1. Granting Prospective Relief by Raising BA Program Fees Would Not Remedy Damages to the Liquidation Trust

42. In *Siegel II*, the bankruptcy court first rejected the U.S. Trustee's contention that correction of the fee schedule going forward, without any redress to debtors who overpaid, could be a sufficient remedy.[7] *Siegel II*, 2022 Bankr. LEXIS 3544, at *9. First, there is no indication that Congress intended that correction of the fee schedule be the remedy for the unconstitutional fees. As the court reasoned in *Siegel II*:

> [C]ongressional intent provides little guidance here. Whatever the goals of Congress may have been in enacting the 2017 Act, when Congress became aware of the 2017 Act's constitutional infirmity it amended the statute. Congress could have chosen at that time to command the BA Districts to implement a retroactive fee increase – but it chose not to. Congress may well have made this decision out of a commitment to its carefully enacted Chapter 11 regime and the harm a retroactive fee assessment in BA Districts could cause. By the same token, Congress could have chosen to command the USTP Districts to issue a refund – it chose not to. This could be due to Congress's commitment to its determination that the USTP Districts should be user rather than taxpayer funded. Only Congress knows which of these alternative objectives it values the most. Congress had the opportunity to choose between them. It declined to do so. Congressional intent is, at best, a wash.

*Id.* at *13.

43. Second, the court observed: "Prospective relief alone provides no relief. Prospective relief, by itself, would serve instead to cement the unconstitutional treatment." *Id.* at *9. Prospective relief is thus "ineffectual." *Id.* at *10 (citing *McKesson Corp. v. Div. of Alcoholic Beverages & Tobacco*, 496 U.S. 18, 40–41 (1990)).

---

[7] The Liquidation Trustee is aware that the U.S. Trustee has made similar arguments in a motion to dismiss it filed (before *Siegel II* was decided) in another fee refund case pending in this Court before Judge Dorsey, *Pitta as Liquidation Trustee v. Vara*, No. 22-50416-JTD (Docket No. 8) (Bankr. D. Del. Nov. 26, 2022). As set forth herein, the court in *Siegel II* disposed of all such arguments.

12

44. *McKesson* is particularly apposite. In that case, the Supreme Court unanimously held that "if a State places a taxpayer under duress promptly to pay a tax when due and relegates him to a postpayment refund action in which he can challenge the tax's legality, the [D]ue Process Clause of the Fourteenth Amendment obligates the State to provide meaningful backward-looking relief to rectify any unconstitutional deprivation." *McKesson Corp. v. Div. of Alcoholic Beverages & Tobacco*, 496 U.S. 18, 31 (1990). The court in *Siegel II* recognized that the same rationale applies here, where a debtor who refuses to pay the UST Program fees may have its bankruptcy converted or dismissed. *Siegel II*, 2022 Bankr. LEXIS 3544, at *14–15.

### 2. Refunding The Excess Fees Is The Proper Relief

#### (i) The Liquidation Trust Is Entitled To A Declaration That It Is Entitled To Receive A Refund Of The Excess Fees

45. The court in *Siegel II* was left with two possibilities: (1) refund overpaying debtors, or (2) assess the higher fees for the period retroactively on BA District debtors. *Id.* at *10 (citing *McKesson*, 496 U.S. at 40–41). The bankruptcy court observed that, first, it had no power to order BA District debtors to make the payments, and second, to do so years late, even if possible, would wreak havoc on those debtors. *Id.* at *10–12.

46. The bankruptcy court therefore held that the proper relief is for the UST Program to refund the excess fees paid by the debtor, relying on *McKesson* and the decisions of the Second and Tenth Circuits on this issue. *Id.* at *12. This approach is consistent with the two appellate courts to have considered the issue post-*Siegel I*. *See Clinton Nurseries*, 53 F.4th at 29; *John Q. Hammons Fall 2006*, 2022 U.S. App. LEXIS 22859, at *6.

47. Following *Siegel II* and the decisions of the Second and Tenth Circuits, the Court may therefore grant a declaratory judgment that the Liquidation Trust is entitled to a refund of Excess Fees. Pursuant to 28 U.S.C. § 2201, the Court is empowered to "declare the rights and

13

other legal relations of any interested party" in cases of actual controversy within its jurisdiction. 28 U.S.C. § 2201(a).  Under section 105(a) of the Bankruptcy Code, the Court is empowered to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C. § 105(a).

### (ii) The Excess Fees Are An Avoidable Transfer Of Property Of The Estate

48. Pursuant to section 1142(b) of the Bankruptcy Code, the Court is empowered to "direct the debtor and any other necessary party to . . . perform any other act . . . that is necessary for the consummation of the plan."  11 U.S.C. § 1142(b).  The Court, in declaring that the Liquidation Trustee is entitled to recovery, may therefore direct the Defendants to pay the refund.

49. The court in *Siegel II* looked to bankruptcy law for a remedy.  The court found that the excess fee payments were unauthorized postpetition date transfers under section 549(a) of the Bankruptcy Code and were therefore recoverable.  *Siegel II*, 2022 Bankr. LEXIS 3544, at *16–18.

50. Section 549(a) of the Bankruptcy Code provides:

(a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—

(1) that occurs after the commencement of the case; and

(2) . . . (B) that is not authorized under this title or by the court.

51. The payment of excess UST Program fees occurred after the commencement of the case.  As the court noted in *Siegel II*, while payment of such fees was authorized by the court, the court did not authorize the payment of unconstitutional fees.  *Siegel II*, 2022 Bankr. LEXIS 3544, at *17–18.

52. Because payment of the excess fees was unauthorized, the Liquidation Trustee may recover the overpayment from the UST Program as a transferee.  11 U.S.C. § 550(a).

53. The period for seeking avoidance and recovery of the Excess Fees under section 549(d) of the Bankruptcy Code was equitably tolled because the Litigation Trustee has pursued the rights of the TWC Liquidation Trust, and the Amendment was the subject of appellate litigation until June 6, 2022, when the Supreme Court issued its opinion in *Siegel I*. Accordingly, the Liquidation Trustee was prevented from asserting an earlier avoidance claim for an unauthorized postpetition transfer based on extraordinary circumstances beyond his control.

## V. CONCLUSION

For the reasons set forth herein, the Liquidation Trustee respectfully requests that the Court grant the Motion, enter judgment in his favor declaring that the Liquidation Trust is entitled to a refund of the Excess Fees and directing the Defendants to refund the Liquidation Trust such Excess Fees in the amount of $971,624.13, and grant such other and further relief as the Court deems appropriate.

Respectfully Submitted,

January 30, 2023    PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Colin R. Robinson*
Jason H. Rosell (admitted *pro hac vice*)
Colin R. Robinson (DE Bar No. 5524)
Gail S. Greenwood (admitted *pro hac vice*)
919 North Market Street, 17th Floor
Wilmington, DE 19899 (Courier 19801)
Tel: 302-652-4100
Email: jrosell@pszjlaw.com
  crobinson@pszjlaw.com
  ggreenwood@pszjlaw.com

*Attorneys for Plaintiff Dean A. Ziehl, solely in his capacity as Liquidation Trustee of the TWC Liquidation Trust*

15