# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>TWC Liquidation Trust,<br><br>      Debtor. | )<br>)<br>)<br>) Chapter 11<br>) Case No. 18-10601 (MFW)<br>)<br>)<br>) |
| Dean A. Ziehl, in his capacity as trustee of the TWC Liquidating Trust,<br><br>      Plaintiff,<br>v.<br><br>Andrew R. Vara, in his official capacity as the United States Trustee for Region 3; Tara Twomey, in her official capacity as Director of the Executive Office for United States Trustees\*; and the United States Trustee Program,<br><br>      Defendants. | )<br>)<br>)<br>)<br>)<br>) Adv. Pro. 22-50476 (MFW)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
## RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
## FOR A REFUND OF OVERPAID UNITED STATES TRUSTEE PROGRAM FEES

*(cover continued on next page)*

---

\*    Defendants have concurrently filed an ex parte application to substitute defendant Tara Twomey, Director, for defendant Ramona D. Elliott, Acting Director, pursuant to Federal Rule of Bankruptcy Procedure 7025, which incorporates Federal Rule of Civil Procedure 25(d) and provides for automatic substitution when a governmental official ceases to hold office.  *See Defendants' Ex Parte Application for Automatic Substitution of Public Officer as Party (FRCP 25; FRBP 7025)* (filed concurrently).  After the Complaint was filed, Ms. Twomey was appointed Director and Ms. Elliott ceased to serve as Acting Director.

RAMONA D. ELLIOTT
Deputy Director/General Counsel
P. MATTHEW SUTKO
Associate General Counsel
ANDREW W. BEYER
Trial Attorney
Department of Justice
Executive Office for
United States Trustees
441 G Street, N.W., Suite 6150
Washington, DC  20530
(202) 307-1399
Fax: (202) 307-2397

ANDREW R. VARA,
United States Trustee, Region 3
JOSEPH J. MCMAHON, JR.
Assistant United States Trustee
JANE M. LEAMY (DE #4113)
Trial Attorney
HANNAH J. McCOLLUM
Department of Justice
Office of the United States Trustee
844 King Street, Suite 2207
Lockbox 35
Wilmington, DE 19801
(302) 573-6491
Fax: (302) 573-6497
Jane.M.Leamy@usdoj.gov

March 17, 2023

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .........................................................**Error! Bookmark not defined.**

NATURE AND STAGE OF THE PROCEEDING................................................................... 1

SUMMARY OF THE ARGUMENT ................................................................................ 2

STATEMENT/COUNTER STATEMENT OF FACTS .......................................................... 3

I.     Congress Established Chapter 11 Quarterly Fees To Avoid Imposing Costs On Taxpayers. ..................................................................................................... 3

II.    The Supreme Court Held The 2017 Fee Increase Unconstitutionally Non-Uniform, But Remanded The Question Of The Proper Remedy....................................... 7

III.   The Bankruptcy Proceedings ............................................................................. 8

ARGUMENT ........................................................................................................... 9

I.     The Court Should Grant Summary Judgement Because A Damages Award Is Not The Appropriate Remedy For The Bankruptcy Clause Violation Identified In *Siegel*. ..................................................................................................... 10

    A.    The Constitutional Violation Is Fully Remedied Through Prospective Action. .................................................................................................... 10

    B.    Even If Retrospective Relief Were Needed, The Remedy Is Extension of The Main Rule—The 2017 Act's Fee Increase—Not A Refund......................... 14

    C.    At A Minimum, A Retrospective Remedy Does Not Apply To The Quarters When The BAs Violated The Still-Mandatory 2001 Judicial Conference Standing Order By Not Collecting Equal Fees. ................................................ 20

II.    Plaintiff's Claim For Avoidance And Recovery Under 11 U.S.C. §§ 549 And 550 Fails. ...................................................................................................... 21

III.   Even If This Court Were To Conclude Repayment Is The Appropriate Remedy, The United States Cannot Lawfully Repay Until There Is A Final And Unappealable Judgment. ...................................................................................... 23

CONCLUSION ......................................................................................................... 24

CERTIFICATE OF SERVICE ..................................................................................... 26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Associated Indus. of Mo. v. Lohman,
   511 U.S. 641 (1994)................................................................................13

Ayotte v. Planned Parenthood of N. New Eng.,
   546 U.S. 320 (2006)...........................................................................12, 19

Barr v. American Association of Political Consultants (AAPC),
   140 S. Ct. 2335 (2020) ................................................................... passim

In re Buffets, LLC,
   597 B.R. 588 (Bankr. W.D. Tex. 2019) .....................................................6

Califano v. Westcott,
   443 U.S. 76 (1979)...................................................................................17

Cedar Chem. Corp. v. United States,
   18 Cl. Ct. 25 (1989) ................................................................................24

In re Clinton Nurseries, Inc.,
   53 F.4th 15 (2d Cir. 2022) ...................................................................8, 19

Comptroller of Treasury of Md. v. Wynne,
   575 U.S. 542 (2015).................................................................................14

Cranberry Growers Coop. v. Layng,
   930 F.3d 844 (7th Cir. 2019) ..................................................................14

Dixon v. United States,
   900 F.3d 1257 (11th Cir. 2018) ...............................................................24

Egbert v. Boule,
   142 S. Ct. 1793 (2022).............................................................................13

Eisai, Inc. v. Sanofi Aventis U.S., LLC,
   821 F.3d 394 (3d Cir. 2016).......................................................................9

ETS Payphones, Inc. v. AT&T Universal Card (In re PSA, Inc.),
   335 B.R. 580 (Bankr. D. Del. 2005) ........................................................22

Franklin v. Navient, Inc.,
   534 F. Supp. 3d 341 (D. Del. 2021), as amended No. 1:17-cv-1640, 2021 WL
   2915033 (D. Del. July 12, 2021)..............................................................11

iv

*In re Friedman's Inc.*,
738 F.3d 547 (3d Cir. 2013)................................................................23

*Harper v. Virginia Dep't of Taxation*,
509 U.S. 86 (1993)........................................................................13

*Heckler v. Mathews*,
465 U.S. 728 (1984)......................................................................12

*In re John Q. Hammons Fall 2006, LLC*,
No. 20-3203, 2022 WL 3354682 (10th Cir. Aug. 15, 2022) ............................8, 19

*Levin v. Com. Energy, Inc.*,
560 U.S. 413 (2010)....................................................................14, 15

*In re Liberty Brands, LLC*,
476 B.R. 443 (Bankr. D. Del. 2012) ....................................................22

*Lindenbaum v. Realgy, LLC*,
13 F.4th 524 (6th Cir. 2021) ..........................................................11, 17

*McKesson Corp. v. Div. of Alcoholic Beverages & Tobacco*,
496 U.S. 18 (1990)....................................................................13, 18

*In re Mosaic Mgmt. Grp., Inc.*,
22 F.4th 1291 (11th Cir. 2022) ..................................................... *passim*

*Oshiver v. Levin, Fishbein, Sedran & Berman*,
38 F.3d 1380 (3d Cir. 1994)..............................................................22

*Peterson v. Imhof*,
No. 2:13-CV-00537 DMC, 2013 WL 5567561 (D.N.J. Oct. 8, 2013) ...................22

*In re Prines*,
867 F.2d 478 (8th Cir. 1989) ..............................................................3

*Railway Labor Executives' Assn. v. Gibbons*,
455 U.S. 457 (1982)......................................................................14

*Roman Cath. Archdiocese of San Juan v. Acevedo Feliciano*,
140 S. Ct. 696 (2020)....................................................................20

*S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*,
Case No. S-06-2845 LKK/JFM, 2012 WL 5387194 (E.D. Cal. Nov. 1, 2012)....................24

*Sessions v. Morales-Santana*,
137 S. Ct. 1678 (2017) ........................................................... *passim*

*Siegel v. Fitzgerald,*
    142 S. Ct. 1770 (2022) ..................................................................... *passim*

*Siegel v. Fitzgerald (In re Circuit City Stores, Inc.),*
    Adv. No. 19-20391-KRH, 2022 WL 17722849
    (Bankr. E.D. Va. Dec. 15, 2022) ............................................. 8, 19, 21

*Siegel v. Fitzgerald (In re Circuit City Stores, Inc.),*
    No. 19-2240, 2022 WL 17750702 (4th Cir. July 20, 2022) ...................... 8

*St. Angelo v. Victoria Farms, Inc.,*
    38 F.3d 1525 (9th Cir. 1994), *amended*, 46 F.3d 969 (9th Cir. 1995) ......... 4, 11, 17

*United States v. Nordic Village, Inc.,*
    503 U.S. 30 (1992) ......................................................................... 12

*Zehner v. Trigg,*
    133 F.3d 459 (7th Cir. 1997) ........................................................... 12

**Statutes**

11 U.S.C. § 507(a)(2) ........................................................................... 23

11 U.S.C. § 549 .............................................................................. 21, 22

11 U.S.C. § 550 .............................................................................. 21, 22

11 U.S.C. § 1112(b)(4)(k) .................................................................... 23

28 U.S.C. § 331 ................................................................................... 20

28 U.S.C. § 586 .................................................................................. 1, 3

28 U.S.C. § 589a ................................................................................. 4, 6

28 U.S.C. § 1930(a)(6) .................................................................. *passim*

28 U.S.C. § 1930(a)(7) .................................................................. *passim*

28 U.S.C. § 2414 ............................................................................. 23, 24

Bankruptcy Administration Improvement Act of 2020, Pub. L. No. 116-325, 134
    Stat. 5086 (2021) .......................................................................... 6, 10

Bankruptcy Judgeship Act of 2017, Pub. L. No. 115-72, Div. B, 131 Stat. 1224 ...................... 5, 7

Federal Courts Improvement Act of 2000, Pub. L. No. 106-518, § 105, 114 Stat.
    2412 .............................................................................................. 4

## Other Authorities

Arg't Tr., *Siegel v. Fitzgerald*, No. 21-441 (Apr. 18, 2022), https://perma.cc/6M8A-Y87E ...................................................................................................... 7, 8

Brief for the Respondent, *Siegel v. Fitzgerald*, No. 21-441, 2022 WL 943378 (U.S. Mar. 1, 2022) ....................................................................................... 7

Fed. R. Bankr. P. 7056 ....................................................................................... 1, 9

Fed. R. Bankr. P. 7062 ............................................................................................ 24

Fed. R. Civ. P. 56(a) .............................................................................................. 1, 9

Fed. R. Civ. P. 62 .................................................................................................... 24

H.R. Rep. No. 95-595 (1977) .................................................................................... 3

H.R. Rep. No. 99-764 (1986) .............................................................................. 4, 16

H.R. Rep. No. 130, 115th Cong., 1st Sess. 7 (2017) ..................................... 5

*Report of the Proceedings of the Judicial Conference of the United States* (Sept. 13, 2018), https://www.uscourts.gov/sites/default/files/ 2018-09_proceedings.pdf ................................................................................. 4, 6

U.S. Bankruptcy Administrator for the Northern District of Alabama, *Instructions Concerning Chapter 11 Quarterly Fees* § V, https://perma.cc/WZK3-N3M6............................. 18

U.S. Bankruptcy Courts—Business and Nonbusiness Cases Commenced, by Chapter of the Bankruptcy Code, During The 12-Month Period Ending December 31, 2018, Tbl. F-2, https://www.uscourts.gov/sites/default/files/data_tables/bf_f2_1231.2018.pdf. ............................. 18

## NATURE AND STAGE OF THE PROCEEDING

1.      Defendants, Andrew R. Vara, in his official capacity as United States Trustee for Region 3 ("United States Trustee"), Tara Twomey, in her official capacity as Director of the Executive Office for United States Trustees, and the "United States Trustee Program,"[1] (collectively "Defendants"), submit this memorandum of law in support of their *Motion for Summary Judgment* (filed concurrently), under Federal Rule of Civil Procedure 56, made applicable herein by Federal Rule of Bankruptcy Procedure 7056.  In addition, Defendants respond to Plaintiff's—Dean A. Ziehl, solely in his capacity as trustee (the "Liquidation Trustee") of the TWC Liquidation Trust (the "Liquidation Trust") ("Plaintiff")—*Motion for Summary Judgment For a Refund of Overpaid United States Trustee Program Fees* (Dkt. 8; *see also* Dkt. 9; Dkt. 10).[2]

2.      As set forth below, Defendants dispute that any refund is due.  However, to the extent the court disagrees and grants Plaintiff's motion, Defendants ask the Court to reserve judgment on the amount of the refund.  Defendants do not dispute the amounts alleged by Plaintiff for the six debtors in the first three quarters of 2018, Herman Decl. at 5-6 (Dkt. 10), however, the Defendants' internal review of debtors' quarterly fee payments during the relevant quarters reflects that if Plaintiff prevails, he would be due a larger refund—by approximately $250,000—than reflected in his allegations.

---

[1]     While there is no separate legal entity denominated the "United States Trustee Program," under 28 U.S.C. § 586 and 11 U.S.C. §§ 101-1532, the Executive Office for United States Trustees together with the United States Trustees and their staffs are often referred to, including internally, as the "United States Trustee Program."  References to the United States Trustee Program herein refer to the Executive Office for United States Trustees, or collectively to the Executive Office for United States Trustees with Offices of the United States Trustee.

[2]     In his motion Plaintiff asserts that if the Court grants his Motion for Summary Judgment, he intends to seek an award of costs, fees, and other expenses.  *See* Pl.'s Mem. at 2.  But Plaintiff has identified no legitimate basis for an award of fees and costs in this case, and Defendants are not aware of any.

## SUMMARY OF THE ARGUMENT

3.    The premise of Plaintiff's adversary proceeding is that quarterly fees he and his predecessor paid pursuant to an increase established by the 2017 amendment to 28 U.S.C. § 1930(a)(6) should be refunded.[3]  In *Siegel*, the Supreme Court held that the statute was unconstitutionally non-uniform, but declined to decide what, if any, further remedy was warranted for that constitutional defect.  *See Siegel v. Fitzgerald*, 142 S. Ct. 1770, 1783 (2022) (noting a "host of legal and administrative concerns with each of the remedies proposed").

4.    Plaintiff fails to appreciate that constitutional equal-treatment violations are not automatically entitled to a retrospective remedy.  Instead, "[the Court] must adopt the remedial course Congress likely would have chosen 'had it been apprised of the constitutional infirmity.'"  *Siegel*, 142 S. Ct. at 1701 (*quoting Levin v. Com. Energy, Inc.*, 560 U.S. 413, 427 (2010)).

5.    Here, the constitutionally appropriate remedy is prospective relief only—the very relief that Congress provided in 2021 when, after learning of the lack of uniformity in collecting fees, it amended the quarterly fee statute to eliminate the disparity about which Plaintiff complains.  Due process requires no further remedy.

6.    But even if a retrospective adjustment was required, Plaintiff's complaint still fails.  Congressional intent is unusually clear in this case: there can be little debate that Congress, which expected the "same fee increase" to apply in the six Bankruptcy Administrator ("BA") districts from the outset, *Siegel*, 142 S. Ct. at 1782 n.2, would prefer collection of higher payments in the six BA districts rather than issuance of refunds in the 88 United States Trustee Program

---

[3]    Specifically, in Plaintiff's Amended Complaint requests: (i) a declaratory judgment determining Plaintiff is entitled to a refund from the United States Trustee Program (Count I) (ii) avoidance and recovery of an unauthorized postpetition transfer under §§ 549 and 550 (Count II); and (iii) a judgment requiring the United States Trustee Program to disgorge any overpayments based on equitable principles of restitution and unjust enrichment (Count III).  Am. Compl. (Dkt. 4).

("Program") districts—particularly where the latter course would resurrect the very funding problem that Congress was purposefully seeking to solve in the 2017 Act.

7.      For the reasons discussed below, this Court should decline to order any refund and grant summary judgment in Defendants' favor.

## STATEMENT/COUNTER STATEMENT OF FACTS

**I.      Congress Established Chapter 11 Quarterly Fees To Avoid Imposing Costs On Taxpayers.**

8.      The United States Trustee Program, a component of the Department of Justice, performs many responsibilities under the Bankruptcy Code, thereby "leav[ing] bankruptcy judges 'free to resolve disputes untainted by knowledge of administrative matters unnecessary and perhaps prejudicial to an impartial judicial determination.'" *In re Prines*, 867 F.2d 478, 480 (8th Cir. 1989) (quoting H.R. Rep. No. 99-764, at 18 (1986)); *see generally* 28 U.S.C. § 586.  United States Trustees exercise a range of enforcement, administrative, and regulatory duties in the bankruptcy system and "serve as bankruptcy watch-dogs to prevent fraud, dishonesty, and overreaching in the bankruptcy arena."  H.R. Rep. No. 95-595, at 88 (1977).  The Program began as a pilot program in 18 judicial districts, but was later made permanent by Congress and currently operates in 88 of the 94 Federal judicial districts.  *Siegel*, 142 S. Ct. at 1776.

9.      A parallel program of judicially appointed bankruptcy administrators known as the Bankruptcy Administrator Program operates in six districts in Alabama and North Carolina.  *See Siegel*, 142 S. Ct. at 1776.  Originally, the six BA districts were to join the Program by 1992, but upon recommendations from the Judicial Conference, that deadline was later extended and then suspended.  *Id*.

10.      From the onset, Congress intended that users of the bankruptcy system would fund the United States Trustee Program by paying user fees.  *Siegel*, 142 S. Ct. at 1776; *see also* H.R.

Rep. No. 99-764, at 22 (1986). Thus, although Congress funds the Program through appropriations, those appropriations are then offset by fees paid into the United States Trustee System Fund (the System Fund) in bankruptcy cases. *See* 28 U.S.C. § 589a. The System Fund derives revenue from various sources—including quarterly fees paid by chapter 11 debtors. *See* 28 U.S.C. §§ 589a(b)(5), 1930(a)(6)(A).

11.     Initially, these fees were imposed in the 88 Program districts but not in the six BA districts. *Siegel*, 142 S. Ct. at 1776. In the mid-1990s, the Ninth Circuit found this violated the uniformity requirement of the Bankruptcy Clause; on that basis, the court held that the extension of the deadline for the six BA districts to join the Program was invalid. *See St. Angelo v. Victoria Farms, Inc.*, 38 F.3d 1525, 1532-33 (9th Cir. 1994), *amended*, 46 F.3d 969 (9th Cir. 1995). The Ninth Circuit did not, however, invalidate the quarterly fee provision, instead ordering the debtor to pay the quarterly fees. *Id*. at 1534.

12.     After *Victoria Farms*, Congress amended section 1930(a) by adding a new paragraph (7), which then provided that "[i]n districts that are not part of a United States trustee region . . . the Judicial Conference of the United States may require the debtor in a case under chapter 11 . . . to pay fees equal to those imposed by paragraph (6) of this subsection." Federal Courts Improvement Act of 2000, Pub. L. No. 106-518, § 105, 114 Stat. 2412. The express purpose of that amendment was to solve the uniformity problem that *Victoria Farms* had identified.

13.     "To implement" section 1930(a)(7),the Judicial Conference of the United States ("Judicial Conference") issued a standing order mandating that quarterly fees "be imposed in [BA] districts in the amounts specified in 28 U.S.C. § 1930, as those amounts may be amended from time to time." Judicial Conference of the U.S., *Report of the Proceedings of the Judicial Conference of the United States* 46 (Sept./Oct. 2001) ("2001 JCUS Order"),

https://www.uscourts.gov/sites/default/files/2001-09_0.pdf.  Complying with this order, BA districts collected the same fees as Program districts for 17 years, matching each congressional fee increase in Program districts.  *Siegel*, 142 S. Ct. at 1777.

14.     In the mid-2010s, deposits in the System Fund substantially decreased, and by fiscal year 2017, its balance had fallen to the point where the Program's costs would no longer be fully offset by user fees, risking requiring reliance on taxpayer funds.  *See* H.R. Rep. No. 130, 115th Cong., 1st Sess. 7 (2017).  To prevent that, Congress passed the Bankruptcy Judgeship Act of 2017 ("2017 Act"), Pub. L. No. 115-72, Div. B, 131 Stat. 1229, to bolster the System Fund by temporarily increasing quarterly fees in larger chapter 11 cases.  *Siegel*, 142 S. Ct. at 1777.  The 2017 Act also authorized 18 temporary bankruptcy judgeships and, to offset the judgeships' cost to taxpayers, directed that 2% of the temporarily increased quarterly fees would be "deposited in the general fund of the Treasury."  Pub. L. No. 115-72, Div. B, §§ 1002, 1003, 1004(b)(1)-(2), 131 Stat. at 1229-32; H.R. Rep. No. 130, 115th Cong., 1st Sess. 7-8.  "[B]ased on informal estimates by [the Congressional Budget Office]," the 2017 Act was expected to increase revenues "by an amount sufficient to fully offset the increases in direct spending caused by the bill."  *Id*. at 9.  The increased fees took effect in the first quarter of 2018.  *See* 2017 Act § 1004(c), 131 Stat. 1232.

15.     By operation of the Judicial Conference's 2001 standing order, quarterly fees automatically increased by the same amount in BA districts on January 1, 2018.  *2001 JCUS Order* 46.  "Despite the Judicial Conference's standing order, and unlike with previous fee increases," *Siegel*, 142 S. Ct. at 1777, the BAs inexplicably failed to collect the required fees.  As the Supreme Court noted, that failure was contrary to Congress's own expectation, "when it passed the 2017 Act, that the Judicial Conference would impose the same fee increase" in the BA districts.  *Id.* at 1782 n.2.

16.     The Judicial Conference's 2001 order remained in effect until September 2018, when it applied (without explanation) the 2017 Act's fee increase to "cases filed on or after" October 1, 2018.  Judicial Conference of the U.S., *Report of the Proceedings of the Judicial Conference of the United States* 11-12 (Sept. 13, 2018), https://www.uscourts.gov/sites/default/files/2018-09_proceedings.pdf; *see also Siegel*, 142 S. Ct. at 1777 ("Only in September 2018 did the Judicial Conference order the [BA] districts to implement the amended fee.").

17.     After some courts held that the 2017 Act was unconstitutionally non-uniform, *see, e.g.*, *In re Buffets, LLC*, 597 B.R. 588, 594 (Bankr. W.D. Tex. 2019), *rev'd and remanded*, 979 F.3d 366 (5th Cir. 2020), Congress enacted clarifying legislation amending section 1930(a)(7) to provide that the Judicial Conference "shall require" fees equal to those imposed in Program districts.  Bankruptcy Administration Improvement Act of 2020, Pub. L. No. 116-325 (2021) ("2021 Act"), § 3(d)(2), 134 Stat. 5088.  Congress thereby corrected the uniformity problem prospectively, without making provision for any refunds.  Section 2(a)(4)(B) of the 2021 Act explained that this change was made to "confirm the longstanding intention of Congress that quarterly fee requirements remain consistent across all Federal judicial districts."  *Id*. § 2(a)(4)(B).

18.     The 2021 Act also amended the fee schedule, extended temporary bankruptcy judgeships, and provided that certain amounts would either be deposited in the general fund for the Treasury or in a special fund for compensating chapter 7 trustees.  *See* 2021 Act § 3(b); 28 U.S.C. § 589a(f).  As of April 2021, the quarterly fee for chapter 11 debtors with quarterly disbursements of $1 million or more was accordingly "0.8 percent of disbursements but not more than $250,000."  28 U.S.C. § 1930(a)(6)(B)(ii)(II); *see* 2021 Act § 3(e)(2)(B)(ii) (effective date).

## II.    The Supreme Court Held The 2017 Fee Increase Unconstitutionally Non-Uniform, But Remanded The Question Of The Proper Remedy.

19.    In *Siegel v. Fitzgerald*, 142 S. Ct. 1770 (2022), the Supreme Court held that the Bankruptcy Judgeship Act of 2017 ("2017 Act"), Pub. L. No. 115-72, Div. B, 131 Stat. 1224, 1229, did not comport with the uniformity requirement of the Bankruptcy Clause but declined to decide what if any further remedy was warranted.  *See id*. at 1783 (noting a "host of legal and administrative concerns" implicated by that question).

20.    The Solicitor General argued before the Court that even if the 2017 Act was unconstitutionally non-uniform, it would be constitutionally sufficient to remedy that disuniformity on a prospective basis only—and Congress already provided that prospective remedy in a 2021 statute. Brief for the Respondent at *45-48, *Siegel v. Fitzgerald*, No. 21-441, 2022 WL 943378 (U.S. Mar. 1, 2022).  Moreover, she argued that even if a retrospective remedy were required, Supreme Court precedent holds that equality may be restored either by extending or by eliminating favorable treatment, and the selection of the appropriate remedy must turn on congressional intent.  *Id*. at *43-44.  She suggested that Congress's desire to avoid the burden of a looming shortfall in the System Fund and its subsequent clarifying legislation confirming the application of increased fees in the six BA districts demonstrate that the uniform remedy Congress would select would be an equal fee increase across all 94 districts, not a refund of fees in the 88 Program districts, which would effectively nullify the 2017 amendment.  *Id*. at *44-48.

21.    This remedial question was actively debated by the Supreme Court at oral argument in *Siegel*.  *See generally* Arg't Tr. 29-45, 67-73, 78-82, 88, *Siegel v. Fitzgerald*, No. 21-441 (Apr. 18, 2022), https://perma.cc/6M8A-Y87E (Court's questions about remedy) (attached as Exhibit 1).  But the Court ultimately remanded the question to the Fourth Circuit to consider it in the first

instance.[4]   142 S. Ct. at 1783.   In addition to other considerations potentially bearing upon the remedial analysis, the Court noted that there is "ample evidence that Congress likely understood, when it passed the 2017 Act, that the Judicial Conference would impose the same fee increase." *Id.* at 1782 n.2.  The remedy question is also currently pending before several appeals and bankruptcy courts throughout the country.[5]

## III.   The Bankruptcy Proceedings

22.   On March 19, 2018, debtors, the Weinstein Company Holdings LLC and its affiliated debtors, filed chapter 11 petitions in this Court.  Bankr. No. 18-10601 (Dkt. 1).  In the first quarter of 2018, debtors began paying quarterly fees pursuant to 28 U.S.C. §1930(a)(6), as the fee schedule was amended by the 2017 Act, without dispute.

23.   On January 20, 2021, the debtors filed the Fifth Amended Joint Chapter 11 Plan of Liquidation ("Plan").  Bankr. No. 18-10601 (Dkt. 3182).  On January 26, 2021, the Court entered an order confirming the Plan.  Bankr. No. 18-10601 (Dkt. 3203).  On February 18, 2021, the Plan

---

[4]   Although the Court remanded the remedy question to the Fourth Circuit, that court remanded it to the bankruptcy court for a preliminary ruling. *Siegel v. Fitzgerald (In re Circuit City Stores, Inc.)*, No. 19-2240, 2022 WL 17750702, at *1 (4th Cir. July 20, 2022).  The bankruptcy court ruled the appropriate remedy was to require repayment by the United States. *Siegel v. Fitzgerald (In re Circuit City Stores, Inc.)*, Adv. No. 19-20391-KRH, 2022 WL 17722849 (Bankr. E.D. Va. Dec. 15, 2022) ("*Siegel II*").  That ruling is on appeal. *See Siegel*, Adv. No. 19-20391-KRH, Dkt. 68 (Dec. 26, 2022).

[5]   In light of *Siegel*, the Supreme Court vacated and remanded decisions by the Second, Tenth, and Eleventh Circuits.  Although the Second and Tenth Circuits recently ordered refunds, they did so summarily and without any discussion of governing remedial principles. *In re John Q. Hammons Fall 2006, LLC*, No. 20-3203, 2022 WL 3354682 (10th Cir. Aug. 15, 2022), *reinstating* 15 F.4th 1011 (10th Cir. 2021); *In re Clinton Nurseries, Inc.*, 53 F.4th 15 (2d Cir. 2022) ("amended and reinstated" decision). This Court should not fall victim to the same oversight. *See In re Mosaic Mgmt. Grp., Inc.*, 22 F.4th 1291, 1329 (11th Cir. 2022) (Brasher, J., concurring in result) (expressing disagreement with Tenth Circuit's decision), *cert. granted, judgment vacated sub nom. Bast Amron LLP v. U.S. Tr. Region 21*, 142 S. Ct. 2862 (2022).  Simultaneous briefs regarding remedy were filed in the Eleventh Circuit on October 11, 2022, and argument was held on February 13, 2023.

became effective.  Bankr. No. 18-10601 (Dkt. 3258).  The Plan installed Plaintiff as Liquidating Trustee of the TWC Liquidation Trust.  Plan § 6, Bankr. No. 18-10601 (Dkt. 3182).  The Plan required the Liquidation Trust to continue to pay quarterly fees until the case was closed or converted.  Plan § 2.2.

24.    Following the Supreme Court's decision in *Seigel*, on December 12, 2022, Plaintiff brought this adversary proceeding.  Compl. (Dkt. 1).  Plaintiff alleges the debtors paid increased fees pursuant to the 2017 Act during the first three quarters of 2018.  Am. Compl. at 6-7 (Dkt. 4); Herman Decl. at 5-6 (Dkt. 10).  Plaintiff seeks to recover as damages the difference between the fees debtors paid under the 2017 Act in the Program districts and the fees debtors would have paid if they filed in a BA districts—notwithstanding the Judicial Conference's 2001 order requiring equal fees.  Am. Compl. at 6-9 (Dkt. 4).[6]  Plaintiff alleges the Liquidating Trust is entitled to a refund of such alleged overpayments.  *Id.*

## ARGUMENT

25.    Under Federal Rule of Civil Procedure 56, which is made applicable to this adversary proceeding by Bankruptcy Rule 7056, summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In applying this standard, the Court should "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion."

---

[6]    As noted above, Defendants do not dispute the amounts alleged by Plaintiff for the six debtors in the first three quarters of 2018, Herman Decl. at 5-6 (Dkt. 10), however, the Defendants' internal review of debtors' quarterly fee payments during the relevant quarters reflects that Plaintiff would be due a larger refund—by approximately $250,000—than reflected in his allegations.  As such, to the extent the court grants Plaintiff's motion, Defendants ask the Court to reserve judgment on the amount of the refund.

*Eisai, Inc. v. Sanofi Aventis U.S., LLC*, 821 F.3d 394, 402 (3d Cir. 2016) (internal citation and quotation marks omitted).

## I. The Court Should Grant Summary Judgement Because A Damages Award Is Not The Appropriate Remedy For The Bankruptcy Clause Violation Identified In *Siegel.*

### A. The Constitutional Violation Is Fully Remedied Through Prospective Action.

26.     Congress has already corrected the constitutional defect that the Supreme Court identified in *Siegel*.  Upon becoming aware of the BA districts' failure to collect the increased fees and resulting litigation, Congress enacted technical legislation that amended 28 U.S.C. § 1930(a)(7) to expressly mandate nationwide uniformity in collection of quarterly fees, thus curing the constitutional defect. *See* Bankruptcy Administration Improvement Act of 2020, Pub. L. No. 116-325, § 3(d)(2), 134 Stat. 5086, 5088 (2021) ("2021 Act").  As explained by an accompanying legislative finding, this technical amendment was intended "to confirm the longstanding intention of Congress that quarterly fee requirements remain consistent across all Federal judicial districts."  Pub. L. No. 116-325, § 2(a)(4)(B), 134 Stat. at 5086.  That prospective remedy alone provides proper relief, and no retrospective remedy is required.

27.     The Supreme Court has made clear that establishing a constitutional equal-treatment violation does not necessarily entitle the plaintiff to individual, retrospective relief.  *See Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1688-98 (2017).  This is the case even when serious constitutional concerns are at issue.  In *Sessions v. Morales-Santana*, the Supreme Court held unconstitutional a statute that afforded more favorable citizenship rules to children born abroad of U.S.-citizen mothers compared to those of U.S.-citizen fathers.  *Id*.  But the Court allowed only "prospective[]" relief, neither granting citizenship to the plaintiff nor retracting the citizenship others had obtained from the unconstitutionally favorable exception.  *Id.* at 1698-1701.

10

28.     Similarly, in *Barr v. American Association of Political Consultants* (*AAPC*), 140 S. Ct. 2335 (2020), the plaintiffs successfully challenged a narrow exception to a general statutory prohibition against robocalls.  As a remedy, plaintiffs demanded that the favorable treatment (ability to make robocalls) be extended generally.  *Id.* at 2348 (plurality op.).  Recognizing the case involved an "equal-treatment constitutional violation," the Court's plurality chose to sever the "discriminatory exception," a remedy that "cures the unequal treatment," and left "in place the longstanding robocall restriction."  *Id.* at 2354-55.  The Court not only refused to extend the more favorable treatment to plaintiffs, but also permitted only prospective relief.  It neither retrospectively created liability for those previously excepted from the prohibition nor retrospectively "negate[d] the liability of parties who made robocalls covered by the robocall restriction."  *Id.* at 2355 n.12 (plurality op.); *see id.* at 2363 (Breyer, J., concurring in judgment with respect to severability).[7]  The plurality determined that its prospective-only approach to the proper remedy was "constitutional, stable, predictable, and commonsensical."  *Id.* at 2356.

29.     Decades before *Siegel*, the Ninth Circuit applied similar principles in addressing a constitutional challenge to the then-applicable quarterly-fee statute, which had required payments in Trustee Program districts but not in BA districts.  *St. Angelo v. Victoria Farms*, 38 F.3d 1525 (9th Cir. 1994).  The Ninth Circuit accepted the debtor's constitutional arguments on the merits.  But it rejected the debtor's contention that it should be relieved from paying the quarterly fees as a remedy.  It instead concluded that the "constitutional infirmity in question may be remedied" by severing the provision that exempted the six BA districts from the Program.  *Id.* at 1535.  The court

---

[7]     *But see Lindenbaum v. Realgy, LLC*, 13 F.4th 524, 527 n.1 (6th Cir. 2021) (opining this portion of *AAPC* is *dicta*); *Franklin v. Navient, Inc.*, 534 F. Supp. 3d 341, 343-44, 347 (D. Del. 2021) (same; holding government debt collectors may be liable for actual damages but due-process defense precluded punitive damages for pre-*AAPC* calls), *as amended* No. 1:17-cv-1640, 2021 WL 2915033 (D. Del. July 12, 2021).

allowed only prospective relief and held that the debtor remained liable for the challenged fees. *Id.*

30.　　The proper remedy for the constitutional defect identified in *Siegel* is a prospective mandate of equal treatment—the same relief awarded in *Morales-Santana*, *AAPC*, and *Victoria Farms*.  And Congress has already provided that relief with the 2021 Act.  The fact that Congress already implemented the very relief to which Plaintiff is entitled does not mean that he can now obtain even more.  On the contrary, this Court should respect Congress's judgment that the appropriate remedy here is prospective reform of the system, not a retrospective unwinding of years of completed fee payments.  *Cf. Ayotte v. Planned Parenthood of N. New Eng.*, 546 U.S. 320, 330 (2006) ("[T]he touchstone for any decision about remedy is legislative intent.").

31.　　"The Constitution does not demand an individually effective remedy for every constitutional violation."  *Zehner v. Trigg*, 133 F.3d 459, 462 (7th Cir. 1997).  That follows in part from the understanding that plaintiffs have Article III standing to challenge "discriminatory statutes or practices even when the government could deprive a successful plaintiff of any monetary relief by withdrawing the statute's benefits from both the favored and the excluded class."  *Heckler v. Mathews*, 465 U.S. 728, 739 (1984).  Thus, constitutional litigation often proceeds to the merits even where (as here) individual plaintiff-based relief is ultimately unavailable.  *See id.* at 740 n.8 ("[V]ictims of a discriminatory government program may be remedied by an end to preferential treatment for others."); *AAPC*, 140 S. Ct. at 2355 (plurality op.) ("[A] plaintiff who suffers unequal treatment has standing to seek 'withdrawal of benefits from the favored class.'") (quoting *Heckler*, 465 U.S. at 737-40).

32.　　Indeed, for constitutional violations, retrospective monetary relief is rarely available at all.  A successful plaintiff can obtain "affirmative monetary recovery" from the United States

12

only to the extent that it can identify an express waiver of sovereign immunity by Congress. *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33-35 (1992). Likewise, Congress has never authorized an award of damages for constitutional violations against individual federal officials, and such a remedy generally cannot be judicially implied. *See Egbert v. Boule*, 142 S. Ct. 1793, 1802-04 (2022).

33.     Contrary to Plaintiff's argument, *see* Pl.'s Mem. at 12-13 (Dkt. 9), precedents involving discriminatory state taxation underscore that retrospective monetary relief is not required here. The Supreme Court has held that, where a state tax statute is unconstitutional, a state must provide "meaningful backward-looking relief" (either by granting a refund to disfavored taxpayers or by collecting additional taxes from favored taxpayers) only if no predeprivation remedy is available. *Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 101 & n.10 (1993). Such retrospective monetary relief is only required if the State did not offer any "meaningful opportunity for taxpayers to withhold contested tax assessments and to challenge their validity in a predeprivation hearing." *McKesson Corp. v. Div. of Alcoholic Beverages & Tobacco*, 496 U.S. 18, 38 n.21 (1990). If a taxpayer cannot withhold payment, "an action at law" is the only alternative in state tax cases because of the "established" rule that a taxpayer "cannot interfere by injunction with the state's collection of its revenues." *Id.* at 33 (quoting *Atchison, T. & S.F. Ry. Co. v. O'Connor,* 223 U.S. 280, 285 (1912)). Where a plaintiff makes payment despite having had such a prior opportunity, "recovery of that payment may be denied" without running afoul of the Due Process Clause. *Id.* at 38 n.21 (quotation marks omitted); *accord Associated Indus. of Mo. v. Lohman*, 511 U.S. 641, 656-57 (1994); *Harper*, 509 U.S. at 101.

34.     Here, Plaintiff and his predecessor could have challenged the nonuniform quarterly fees prior to payment. They could have sought a determination of the constitutionality of the fee

scheme through an action for injunctive or declaratory relief before making any of the challenged payments. Or they could have withheld payment and raised their uniformity arguments as a defense to any collection or other enforcement efforts by the government, which would trigger a predeprivation hearing. *See Cranberry Growers Coop. v. Layng*, 930 F.3d 844, 847 (7th Cir. 2019) (debtor refused to pay fees and filed objection after receiving a notice of unpaid fees); *cf. Railway Labor Executives' Assn. v. Gibbons*, 455 U.S. 457, 462, 465 (1982) (estate trustee sought to enjoin application of statute that Court held violated the uniformity requirement of the Bankruptcy Clause; 11 U.S.C. §§ 1112(b)(1)-(3) & (4)(K), 1128(a), 1129(a)(12). Instead, Plaintiff and his predecessor paid the amended fees without protest and only later sought to challenge them. The Constitution does not compel retrospective relief in these circumstances.

**B.** **Even If Retrospective Relief Were Needed, The Remedy Is Extension of the Main Rule—The 2017 Act's Fee Increase—Not A Refund.**

35. Even if backward-looking relief were warranted, that relief cannot include the "retrospective refund" that Plaintiff requests. *Mosaic*, 22 F.4th at 1329 (Brasher, J., concurring in the result). Instead, the proper course would be to establish equal treatment by extension of the main rule—the 2017 Act's fee increase—to the six BA districts. There is no basis for issuing a remedy that effectively provides a windfall to debtors because of the delay in imposing a fee increase in the six BA districts.

36. Where, as here, a statute unconstitutionally "benefit[ed] one class" while "exclud[ing] another from the benefit," there are "two remedial alternatives." *Morales-Santana*, 137 S. Ct. at 1698 (quoting *Califano v. Westcott*, 443 U.S. 76, 89 (1979)). Equality can be restored either by "withdrawal of benefits from the favored class" or by "extension of benefits to the excluded class." *Id.* at 1698-99; *see Comptroller of Treasury of Md. v. Wynne*, 575 U.S. 542, 569 (2015) (the Government "can cure the violation by either 'leveling up' or 'leveling down' "); *Levin*

*v. Com. Energy, Inc.*, 560 U.S. 413, 426-27 (2010) ("When unlawful discrimination infects tax classifications or other legislative prescriptions, the Constitution simply calls for *equal treatment*. How equality is accomplished—by extension or invalidation of the unequally distributed benefit or burden, or some other measure—is a matter on which the Constitution is silent.") (emphasis in original).

37.     Plaintiff's own preferences and interests "do[] not circumscribe this inquiry." *Levin*, 560 U.S. at 427. Instead, "[t]he choice between these outcomes is governed by the legislature's intent, as revealed by the statute at hand." *Morales-Santana*, 137 S. Ct. at 1699. That is, the Court must "implement what the legislature would have willed had it been apprised of the constitutional infirmity." *Id.* (quoting *Levin*, 560 U.S. at 427). To ascertain what Congress "would have willed," the Court considers both "the intensity of [Congress's] commitment to the residual policy"—*i.e.*, the general rule—and "the degree of potential disruption of the statutory scheme that would occur" by extending favorable treatment to the plaintiff as opposed to withdrawing it from others. *Id.* at 1700 (citation omitted) (quoting *Welsh v. United States*, 398 U.S. 333, 365 (1970) (Harlan, J., concurring)).

38.     Where a minority is treated unfavorably, the "preferred rule" is "to extend favorable treatment" to the disadvantaged class. *Morales-Santana*, 137 S. Ct. at 1701. But where the unconstitutionality lies in a favorable "'exception' to the 'general rule applicable to a substantial majority,'" it is generally appropriate to nullify the favorable treatment instead. *Mosaic*, 22 F.4th at 1329 (Brasher, J., concurring in result) (quoting *Morales-Santana*, 137 S. Ct. at 1701) (ellipsis omitted).

39.     Plaintiff argues that "there is no indication that Congress intended that correction of the [BA] fee schedule be the remedy for the unconstitutional fees." Pl.'s Mem. at 12 (Dkt. 9).

Plaintiff is wrong. The nature and purpose of the fees at issue leave no doubt as to the remedy Congress would intend here. Since the creation of the United States Trustee Program, Congress has legislated to ensure its costs are borne "by the users of the bankruptcy system—not by the taxpayer." H.R. Rep. No. 99-764, at 22 (1986). Congress enacted the fee increase in the 2017 Act precisely to counteract an imminent shortfall in user funds that threatened to shift significant financial liability to taxpayers at large. As Judge Brasher of the Eleventh Circuit has recognized, that fee increase is the "general rule" applicable to the vast majority of districts and bankruptcy cases nationwide, while the six BA districts "were—for a time—a small 'exception' to that general rule." *Mosaic*, 22 F.4th at 1330 (Brasher, J., concurring in result); *cf. Morales-Santana*, 137 S. Ct. at 1701.

40. Indeed, Congress's commitment to this "general rule" is underscored by the fact that it never intended any favorable exception to exist. As the Supreme Court recognized in *Siegel*, there is "ample evidence that Congress likely understood, when it passed the 2017 Act, that the Judicial Conference would impose the same fee increase." *Siegel*, 142 S. Ct. at 1782 n.2; *see also Siegel* Tr. 30-34, 84 (Kavanaugh, J.) (suggesting that the BA districts' failure to collect "equal fees" as mandated by Judicial Conference's 2001 order was a "mistake" or "foul-up"); *Mosaic*, 22 F.4th at 1330 (Brasher, J., concurring in result) ("Congress plainly anticipated that the Judicial Conference would impose the [increased] fees without delay."). And the 2021 Act confirms that Congress saw fit to resolve the disuniformity by increasing fees in BA districts to Trustee Program levels, not by reducing Trustee Program fees to the pre-2017 schedule.

41. The other key factor—the "degree of potential disruption of the statutory scheme that would occur" from implementing a particular remedy, *Morales-Santana*, 137 S. Ct. at 1700 (quoting *Heckler*, 465 U.S. at 739 n.5)—weighs just as strongly against awarding Plaintiff's

preferred relief. Granting refunds in Trustee Program districts would effectively repeal the 2017 Act, which Congress enacted for the clearly expressed purpose of ensuring adequate funding for the bankruptcy system without resort to taxpayer funds. Plaintiff's proposed refund would nullify Congress's policy choices while "impos[ing] hardship on" both the Trustee Program and taxpayers, "whom Congress plainly meant to protect" when enacting the 2017 Act. *Califano*, 443 U.S. at 90.

42. Accordingly, if a retrospective remedy were warranted, it would be extension of the main rule of the 2017 Act's fee increase nationwide. Applying the main rule rather than the exception is also consistent with the Supreme Court's holding in *Siegel* that the constitutional infirmity was caused by the statute's failure, before the 2021 Act, to "*require* the Judicial Conference to impose an equivalent increase."[8] 142 S. Ct. at 1782 n.2 (emphasis in original). Under that main rule, Plaintiff is not entitled to a refund.

43. This Court need not address what the invalidity of the BA district exception to the 2017 Act means for other parties. *See Lindenbaum v. Realgy, LLC*, 13 F.4th 524, 528 (6th Cir. 2021) ("We must determine the legal rule that applies to the parties before us."). In *Morales-Santana*, for example, the Supreme Court refused to extend a statutory exception to petitioner that would accord him citizenship. 137 S. Ct. at 1686. In doing so, the Court did not suggest that invalidating the exception would require citizenship to be revoked from those who previously

---

[8]     The same conclusion can be stated in terms of severability. *See, e.g.*, *AAPC*, 140 S. Ct. at 2351-55 (plurality op.). When deciding which portion of a statute to invalidate, courts employ a "decisive preference for surgical severance rather than wholesale destruction." *Id.* at 2350-51. Here, any remedy should reflect partial invalidation of section 1930(a)(7) to the extent it authorized any departure from nationwide uniformity (as found in *Siegel*), not invalidation of the 2017 Act's amendment to section 1930(a)(6). *Accord Victoria Farms*, 38 F.3d at 1535 (invalidating section 317(a) of Judicial Improvements Act of 1990, not section 1930(a)(6)).

benefited from it. *Id*. at 1686, 1701. Rather, it determined which legal rule should apply—the main rule—and then applied that rule to petitioner. This Court should do the same here.

44. If this Court were to reach the question of what fees were due in BA districts (assuming retrospective relief is required), the answer is the same: congressional intent dictates applying the 2017 Act's increased fee. Congress plainly would prefer a remedy that eliminated (insofar as possible) the inadvertently favorable treatment extended to debtors in the six BA districts over refunds in the other 88 districts. *See Mosaic*, 22 F.4th at 1330 (Brasher, J., concurring in result). That remedy would not only honor Congress's intention to ensure adequate funding for the U.S. Trustee Program, but also minimize the universe of cases potentially requiring action. The 88 Program districts accounted for the vast majority—more than 97%—of chapter 11 filings nationwide in 2018.[9] To the extent any retrospective leveling is required, it would be far more practicable to act upon the outlier set of cases—the (modest) number of debtors with quarterly disbursements exceeding $1 million who were among the 3% of chapter 11 filings that occurred in BA districts—than upon relevant debtors in the remaining 97% of cases nationwide.

45. A process already exists for collecting those fees, as Administrator's routinely refer unpaid fees to the Treasury Department for collection.[10] Even if the collection effort is not "perfectly successful," "a good-faith effort to administer and enforce" a retroactive collection from those who made lower payments can "constitute adequate relief" for differential treatment. *McKesson*, 496 U.S. at 41 n.23. That principle is particularly salient here, where the increased

---

[9] *See* U.S. Bankruptcy Courts—Business and Nonbusiness Cases Commenced, by Chapter of the Bankruptcy Code, During The 12-Month Period Ending December 31, 2018, Tbl. F-2, https://www.uscourts.gov/sites/default/files/data_tables/bf_f2_1231.2018.pdf.

[10] *See, e.g.*, U.S. Bankruptcy Administrator for the Northern District of Alabama, *Instructions Concerning Chapter 11 Quarterly Fees* § V, https://perma.cc/WZK3-N3M6.

fees would need to be sought from only a miniscule fraction of Chapter 11 debtors (*i.e.*, the largest debtors among fewer than 3% of Chapter 11 debtors nationwide).

46.     Where, as here, a plaintiff "challenge[s] a discriminatory exception that favors others," *AAPC*, 140 S. Ct. at 2355 (plurality op.), a successful plaintiff will often not obtain individual relief.  If Congress wished to authorize a monetary remedy for the constitutional violation that occurred here, it could have done so.  But the Constitution does not require it, and this Court should not impose a remedy that so clearly contravenes Congress's intent.

47.     Plaintiff cites some courts addressing the remedial question since *Siegel* that have concluded that debtors in Program districts were entitled to refunds of fees paid under the 2017 Act.[11] But to the extent those decisions offered any reasoning, they did so without confronting the fact that a refund remedy would frustrate Congress's purpose in enacting the 2017 Act in the first place.

48.     The Tenth Circuit, for example, apparently did not disagree that it would be more consonant with "legislative intent" to undertake additional collections in BA districts than to relieve debtors of their fee obligations in Program districts.  *Hammons*, 15 F.4th at 1025.  It nonetheless concluded that a refund remedy was appropriate because it lacked authority to direct additional collections in bankruptcy courts in Alabama and North Carolina.  *See id.* at 1026.  But the controlling question is whether the remedy sought is consistent with the congressional scheme— not whether the current court is the right forum to provide it.  *See Ayotte*, 546 U.S. at 330 (directing that "a court cannot 'use its remedial powers to circumvent the intent of the legislature'" when

---

[11]    *See In re Clinton Nurseries, Inc.*, 53 F.4th 15 (2d Cir. 2022) ("amended and reinstated" decision) (petition for rehearing en banc pending); *In re John Q. Hammons Fall 2006, LLC*, No. 20-3203, 2022 WL 3354682 (10th Cir. Aug. 15, 2022) (reinstating prior opinion); *Siegel v. U.S. Trustee Program* (*In re Circuit City Stores, Inc.*), No. 19-ap-3091, 2022 WL 17722849 (Bankr. E.D. Va. Dec. 15, 2022), *appeal pending* No. 23-cv-1 (E.D. Va).

addressing a conflict between a statute and the Constitution) (quoting *Califano v. Westcott*, 443 U.S. 76, 94 (1979)). Indeed, courts generally lack binding authority to address how a statute is applied in other jurisdictions, but the Supreme Court has made clear that a leveling-down remedy is sometimes the legally correct one. That is particularly clear here, where any practical constraints on this Court's remedial authority would result not from its territorial limitations, but rather, from Plaintiff's failure to name the Judicial Conference as a defendant. *See Mosaic*, 22 F.4th at 1330 (Brasher, J., concurring in result) (explaining that the challenging party should have joined "the Judicial Conference" to the litigation "to effectuate [the proper] remedy").

      **C.**     **At A Minimum, A Retrospective Remedy Does Not Apply To The Quarters When The BAs Violated The Still-Mandatory 2001 Judicial Conference Standing Order By Not Collecting Equal Fees.**

     49.    Even if this Court believes a refund is the appropriate remedy (which it is not), it should not require a retrospective remedy for the first three quarters of calendar year 2018. On January 1, 2018, when the 2017 amendment became effective, the Judicial Conference's 2001 order "imposed in [BA] districts [quarterly fees] in the amounts specified in 28 U.S.C. § 1930, as those amounts may be amended from time to time." 2001 JCUS Order 46. Through this order, the Judicial Conference imposed in Administrator Districts the increased fees of the 2017 Act as of its effective date because that was the amount "specified in 28 U.S.C. § 1930," as amended. *Id*. It did not impose different fees until it adopted the 2018 standing order.

     50.    By statute, BAs were statutorily required to comply with the Judicial Conference's still-in-effect 2001 Standing Order. 28 U.S.C. § 331 ("All judicial officers and employees of the United States shall promptly carry into effect all orders of the Judicial Conference."). Thus, both the 2017 Act and the Judicial Conference imposed the same fees across all judicial districts—whether or not the BAs actually collected them—at least until the Judicial Conference's

2018 order imposed a different fee requirement.[12]  Thus, there was no disparity until the fourth quarter of 2018.

51.    Because there was no disparity in the fees imposed prior to the 2018 Judicial Conference order, there is no need to equalize the fees imposed during that period, even if a retrospective remedy is otherwise required—which, for the reasons set forth in Argument Section I.A *supra*, it is not.  The BA's defiance of the Judicial Conference is no reason to require retrospective relief.

## II.    Plaintiff's Claim For Avoidance And Recovery Under 11 U.S.C. §§ 549 And 550 Fails.

52.    Plaintiff's claim for avoidance and recovery of purported quarterly fee overpayments under 11 U.S.C. §§ 549 and 550, *see* Pl.'s Mem. at 14-15 (citing *Siegel II*, 2022 WL 17722849), fails for two reasons.

53.    First, Plaintiff's claim is barred because Plaintiff failed to commence this action within the time required by 11 U.S.C. § 549(d).  Under section 549(d) "[a]n action or proceeding under this section may not be commenced after the earlier of . . . (1) two years after the date of the transfer sought to be avoided; or (2) the time the case is closed or dismissed."  11 U.S.C. § 549(d).  Here Plaintiff made the alleged overpayments under the 2017 Act starting in the first quarter of 2018.  But he did not commence this adversary proceeding until December 2022, *i.e.*, over four years later.  Any claim that the quarterly fees were an unauthorized transfer of property of the estate under section 549 are therefore time barred.  Indeed, the court in *Siegel II* recognized that timeliness was a threshold requirement for a section 549 claim.  *See Siegel II*, 2022 WL 17722849, at *6 n.11 (recognizing that "[t]hese Adversary Proceedings were commenced by the filing of the

---

[12]    Judicial orders cannot provide after-the-fact *nunc pro tunc* relief, *Roman Cath. Archdiocese of San Juan v. Acevedo Feliciano*, 140 S. Ct. 696, 700-01 (2020), so the Judicial Conference's 2018 order cannot be retroactively applied to negate the 2001 JCUS Order.

Motion to Determine on March 28, 2019 . . . well within two years after the date of the" alleged overpayment (citing 11 U.S.C. § 549(d))).

54.     Plaintiff attempts to avoid this statute of limitations problem, by asserting that the limitation in section 549(d) was equitably tolled.  Pl.'s Mem. at 15.  Equitable tolling of a statute of limitations can occur when "(1) the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) the plaintiff has timely asserted his or her rights mistakenly in the wrong forum."  *In re Liberty Brands, LLC*, 476 B.R. 443, 450 (Bankr. D. Del. 2012) (quoting *In re Rowland*, 275 B.R. 209, 216 (Bankr. E.D. Pa. 2002); *see also Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d Cir. 1994).  Generally, in the section 549 context, courts have equitably tolled the statute of limitations "where the postpetition transfers the trustee seeks to avoid have been concealed."  *Peterson v. Imhof*, No. 2:13-CV-00537 DMC, 2013 WL 5567561, at *6 (D.N.J. Oct. 8, 2013).  That is not the case here.  Plaintiff instead argues, without citation, that the fact that the 2017 Amendment was "subject of appellate litigation until June 6, 2022," was somehow an "extraordinary circumstances beyond his control."  Pl.'s Mem. at 15.  Although Plaintiff was not a party to the *Siegel* litigation, nothing prevented him from asserting an objection to the 2017 Act prior to the resolution of that issue by the Supreme Court as many other debtors did.  Equitable tolling does not save Plaintiff's claim from the statute of limitations set forth in section 549(d).

55.     Second, even if Plaintiff's claim under section 549 were timely, the quarterly fee payments cannot be avoided because they do not meet the requirements of section 549.  The elements of a section 549 claim are: "(1) after the commencement of the bankruptcy case in question, (2) property of the estate (3) was transferred, and (4) the transfer was not authorized by the

Bankruptcy Court or by a provision of the Bankruptcy Code." *ETS Payphones, Inc. v. AT&T Universal Card (In re PSA, Inc.)*, 335 B.R. 580, 584-585 (Bankr. D. Del. 2005) (citations omitted). Here, Plaintiff cannot establish that the payment of quarterly fees was "not authorized."

56.     Plaintiff relies on the *Siegel II* court's determination that "while payment of such fees was authorized by the court, the court did not authorize the payment of unconstitutional fees." Pl.'s Mem. at 14 (citing *Siegel II*, 2022 WL 17722849, at *6). Defendants disagree. Although the amount at issue is now disputed by Plaintiff, he never raised it at the time the fees were paid, and the quarterly fees were always authorized. *See In re Friedman's Inc.*, 738 F.3d 547, 555 (3d Cir. 2013) (noting a post-petition transfer pursuant to court order "would appear to be unavoidable as analyzed under § 549, as it was specifically authorized by court order."). Both the Bankruptcy Code and the bankruptcy court's order confirming the debtor's plan authorized the payment of quarterly fees. Section 1112(b)(4)(k) of the Bankruptcy Code contemplates that the debtor in possession will pay quarterly fees, which are required by 28 U.S.C. § 1930(a)(6). 11 U.S.C. § 1112(b)(4)(k); *see also* 11 U.S.C. § 507(a)(2) (providing the priority of "any fees and charges assessed against the estate under chapter 123 of title 28"). The Plan, as confirmed by the Court, also contemplates the payment of quarterly fees. *See* Plan § 2.2 (All fees payable pursuant to 28 U.S.C. § 1930 shall be paid on the earlier of when due or the Effective Date, or as soon thereafter as practicable."); Confirmation Order (Dkt. 3203).

## III.    Even if this Court Were To Conclude Repayment Is the Appropriate Remedy, The United States Cannot Lawfully Repay Until There Is A Final And Unappealable Judgment.

57.     Under section 2414, Congress authorized the payment of judgments only after "the Attorney General determines that no appeal shall be taken from a judgment or that no further review will be sought from a decision affirming the same," and the Attorney General "so certif[ies]." 28 U.S.C. § 2414. Only at that point is "the judgment . . . deemed final." *Id*. "Finality

under 28 U.S.C. § 2414 protects the Government from prematurely paying a claim that might later be reversed on appeal." *Cedar Chem. Corp. v. United States*, 18 Cl. Ct. 25, 31-32 (1989). *See also* Fed. R. Bankr. P. 7062; Fed. R. Civ. P. 62 (entitling the government to a stay pending appeal without posting a bond).

58.     Section 2414 means that "[t]he United States cannot be required to pay [a] money judgment against it until it has exhausted all appeals it decides to take." *Dixon v. United States*, 900 F.3d 1257, 1268 (11th Cir. 2018). The government's obligation to follow section 2414 transcends this case.

59.     Courts may not order the United States to make a payment before it is statutorily authorized to do so. 28 U.S.C. § 2414. Thus, the Eleventh Circuit reversed an order requiring the government to pay a judgment within thirty days of a decision because it did not account for the possibility that the government might seek further review. *Dixon*, 900 F.3d at 1268; *see also Cedar Chem.*, 18 Cl. Ct. at 31-32 ("Congress entrusts the determination of finality solely to the Attorney General. Title 28 of U.S.C. § 2414 grants this court no authority to perform a function committed by law to (and exclusively to) the Attorney General."); *S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*, Case No. S-06-2845 LKK/JFM, 2012 WL 5387194, at *2, 4 (E.D. Cal. Nov. 1, 2012) (refusing to require a date certain for payment because the federal defendant does not control the disbursement of judgment appropriations).

60.     Should repayment ultimately prove to be the proper remedy, the United States will repay after it has exhausted its appeals and a final unappealable judgment is entered.

## CONCLUSION

61.     For these reasons, the United States respectfully requests that the Court grant the Defendants' summary judgment motion, deny Plaintiff's summary judgment motion, and enter judgment in Defendants' favor.

Date: March 17, 2023                              Respectfully submitted,

                                                  By: /s/ Jane M. Leamy
    RAMONA D. ELLIOTT              ANDREW R. VARA,
    Deputy Director/General Counsel  United States Trustee, Region 3
    P. MATTHEW SUTKO                JOSEPH J. MCMAHON, JR.
    Associate General Counsel       Assistant United States Trustee
    ANDREW W. BEYER                 JANE M. LEAMY (DE #4113)
    Trial Attorney                  Trial Attorney
    Department of Justice           HANNAH J. McCOLLUM
    Executive Office for            Trial Attorney
    United States Trustees          Department of Justice
    441 G Street, N.W., Suite 6150  Office of the United States Trustee
    Washington, DC  20530          844 King Street, Suite 2207
    (202) 307-1399                  Lockbox 35
    Fax: (202) 307-2397             Wilmington, DE 19801
                                    (302) 573-6491
                                    Fax: (302) 573-6497
                                    Jane.M.Leamy@usdoj.gov

## CERTIFICATE OF SERVICE

   I hereby certify that on March 17, 2023, I electronically filed the foregoing with the Clerk of this Court using the CM/ECF system which will send notification of such filing to all ECF registrants in this case. I further certify that the foregoing was emailed to counsel for Plaintiff:

   Gail S. Greenwood
   Jason H. Rosell
   Pachulski Stang Ziehl & Jones LLP
   150 California St.
   15th Floor
   San Francisco, CA 94111
   Email: ggreenwood@pszjlaw.com
   Email: jrosell@pszjlaw.com

   Colin R. Robinson
   Pachulski Stang Ziehl & Jones LLP
   919 North Market Street
   17th Floor
   Wilmington, DE 19801
   Email: crobinson@pszjlaw.com

          /s/ *Jane M. Leamy*
          Jane M. Leamy