**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| TWC LIQUIDATION TRUST, LLC, ) | |
| ) | Case No. 18-10601 (MFW) |
| Debtor. ) | |
| ) | |
| _____ ) | |
| ) | |
| Dean A. Ziehl, in his capacity as ) | |
| Trustee of the TWC LIQUIDATING ) | |
| TRUST, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| ANDREW R. VARA, in his capacity as ) | |
| the United States Trustee for ) | |
| Region 3; TARA TWOMEY, in her ) | |
| Capacity as Director of the ) | |
| Executive Office for United States ) | |
| Trustees; and the UNITED STATES ) | |
| TRUSTEE PROGRAM, ) | Adv. Proc. No. 22-50476 |
| ) | |
| Defendants. ) | Rel Docs: 4, 5, 8, 9, 10, |
| ) | 16, 17, 19, 20, 21, 22, |
| ) | 23 |
| _____ ) | |

**OPINION[1]**

Before the Court are Cross Motions for Summary Judgment

filed by the parties in the above adversary proceeding, in which

the Plaintiff seeks a refund of quarterly fees paid to the United

States Trustee (the "UST") which were found by the Supreme Court

---

[1]    This Opinion constitutes the findings of fact and
conclusions of law of the Court pursuant to Rule 7052 of the
Federal Rules of Bankruptcy Procedure.

to be unconstitutional.[2]  For the reasons stated below, the Court

will grant the Plaintiff's Motion and deny the Defendants'

Motion.


I.   BACKGROUND

In October 2017, Congress amended section 1930(a)(6) of

title 28 to increase significantly the quarterly fees payable to

the UST Program in chapter 11 cases (the "2017 Amendment").[3]  The

2017 Amendment imposed the quarterly fee increase only in

Districts administered by the UST Program (the "UST Districts"),

which includes the District of Delaware.  The quarterly fees did

not initially apply in the Districts of Alabama and North

Carolina which are administered by Bankruptcy Administrators (the

"BA Districts").[4]

---

[2]    Siegel v. Fitzgerald, 142 S. Ct. 1770, 1782-83 (2022)
(concluding that increased quarterly fees paid by debtors in
districts overseen by the UST but not by debtors in districts
overseen by bankruptcy administrators was unconstitutional).  The
UST oversees debtors in 88 of the 94 federal districts, including
the District of Delaware (the "UST Districts"), while the
remaining six districts (located in North Carolina and Alabama)
are overseen by Bankruptcy Administrators (the "BA Districts").

[3]    Bankruptcy Judgeship Act of 2017, Pub. L. No. 115-72 § 1004,
131 Stat. 1224, 1232 (Oct. 26, 2017) (increasing the maximum fee
per debtor, for quarterly disbursements in excess of $25 million,
by over 800%, from $30,000 to $250,000).

[4]    28 U.S.C. § 1930(a)(7) (2017) (providing that "the Judicial
Conference of the United States may require" the debtors in BA
Districts to pay fees equal to those imposed in UST Districts)
(emphasis added).  A subsequent amendment, effective January 12,
2021, mandated a uniform fee increase in BA Districts (the "2021

On March 19, 2018, The Weinstein Company Holdings, LLC, and
its affiliates (the "Debtors") filed voluntary petitions for
relief under chapter 11 of the Bankruptcy Code.  On January 26,
2021, the Court confirmed the Fifth Amended Joint Chapter 11 Plan
of Liquidation, which became effective on February 18, 2021.
Pursuant to the Plan and the accompanying Liquidation Trust
Agreement, Dean A. Ziehl, (the "Liquidation Trustee") was
appointed as the successor-in-interest to, and the representative
of, the Debtors' estates.  The Debtors' estates have always paid
the increased quarterly fees assessed by the UST Program.

On December 12, 2022, the Liquidation Trustee commenced this
adversary proceeding against certain representatives of the UST
(the "Defendants") seeking a refund of the additional quarterly
fees paid by the estates to the UST pursuant to the 2017
Amendment.[5]  Specifically, the Liquidation Trustee seeks a refund
of the excess fees paid: (1) under sections 105 and 1142 of the
Bankruptcy Code, (2) as an unauthorized transfer avoidable under
section 549 of the Code, and (3) as payments that unjustly
enriched the UST.  The Defendants disagree, contending that: (1)
a refund is not the appropriate remedy, (2) the excess fee
payment cannot be avoided because the limitations period has run

---

Amendment").  28 U.S.C. § 1930(a)(7) (2021) (providing that the
Judicial Conference shall require the debtors in BA Districts to
pay fees equal to those imposed in UST Districts).

[5]    28 U.S.C. § 1930(a)(6) (2017).

and cannot be equitably tolled, and (3) even if a refund were the appropriate remedy, the United States cannot lawfully be required to repay the estates until there is a final and non-appealable judgment.

Briefing is complete and the Motions are now ripe for decision.

## II.   JURISDICTION

The Motion is a core proceeding over which the Court has subject-matter jurisdiction.[6]  Additionally, the parties have consented to the entry of a final order by this Court.[7]

## III.  DISCUSSION

### A.   Standard for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings under Rule 7056 of the Federal Rules of Bankruptcy Procedure, provides that a "court

---

[6]     28 U.S.C. §§ 157(b)(2)(A), 157(b)(2)(O) & 1334(b).

[7]     Wellness Int'l Network, Ltd. v. Sharif, 575 U.S. 665, 683-84 (2015) (holding that the bankruptcy court may enter a final order without offending Article III so long as the parties consent); Adv. D.I. 4 at ¶ 6; Adv. D.I. 14 at ¶ 6; see also Del. Bankr. L.R. 9013-1(f) & (h) (requiring that all motions and objections "shall contain a statement that the [filing party] does or does not consent to the entry of final orders" and that in the absence of such a statement, the party "shall have waived the right to contest the authority of the Court to enter final orders or judgments.").

shall grant summary judgment if the movant shows that there is no genuine dispute as to material fact and the movant is entitled to judgment as a matter of law."[8]  The rule thus establishes a two-part test for when summary judgment is appropriate: (1) the movant must identify and establish the legal principles that entitle it to judgment as a matter of law; and (2) the court must be able to apply those legal principles dispositively without having to resolve any genuine disputes of material fact.[9]

The parties agree on the relevant facts, and the legal issue is straightforward:  What is the appropriate remedy for the unconstitutional imposition of increased quarterly fees on the Debtors' estates?

B.    Arguments of the Parties

The Liquidation Trustee argues that its Motion for Summary Judgment should be granted because the Supreme Court in Siegel v. Fitzgerald[10] found that the increased fees assessed by the 2017 Amendment violated the uniformity of bankruptcy laws requirement

---

[8]    Fed. R. Civ. P. 56(a).

[9]    11 Moore's Federal Practice, § 56.20 (Matthew Bender 3d ed. 2023).

[10]    142 S. Ct. at 1782 (concluding that the uniformity requirement prohibited Congress from arbitrarily burdening debtors in UST Districts "with a more onerous funding mechanism" than that which applied to debtors in BA Districts).

of the U.S. Constitution.[11]   Although the Supreme Court did not

articulate the appropriate remedy for that violation,[12] the

Liquidation Trustee asserts that the proper remedy is to order

the UST to refund the excess fees paid by the Debtors and the

Liquidation Trustee.

>    1.    Prospective v. Retrospective Relief

The Defendants argue that the appropriate remedy is not a

refund but only prospective relief, i.e., assuring that in the

future all debtors in all Districts pay the same quarterly fees.

They cite Supreme Court precedent holding that a constitutional

equal-treatment violation does not always entitle the plaintiff

to individual, retrospective relief, such as a refund, and that

prospective relief assuring equal treatment in the future is

sufficient.[13]   They assert that the remedy depends on

---

[11]    U. S. Const., art. I, § 8, cl. 4 (empowering Congress to establish "uniform Laws on the subject of Bankruptcies throughout the United States").

[12]    Siegel, 142 S. Ct. at 1783.

[13]    See Sessions v. Morales-Santana, 137 S. Ct. 1678, 1698-1701 (2017) (notwithstanding the unconstitutionally unequal treatment suffered by the plaintiff, the Court allowed only prospective relief, neither granting citizenship to the plaintiff nor retracting the citizenship others had obtained from the unconstitutionally favorable exception); see also Barr v. Am. Ass'n of Political Consultants (AAPC), 140 S. Ct. 2335, 2354-55 (2020) (providing only prospective relief by severing the exception to statute banning robocalls which had created unequal protection of First Amendment rights).

Congressional intent,[14] which in this case is evidenced by the

2017 Amendment itself where Congress increased the quarterly fees

to assure that the UST Program was self-supporting and not in

need of taxpayer money to support it.[15]  They contend that this

intent was further evidenced by the fact that, after the Siegel

decision, Congress passed the 2021 Amendment to mandate that all

debtors in BA as well as UST Districts were to pay the increased

quarterly fees after January 12, 2021.[16]  Thus, the Defendants

argue that Congress' intent is clear that prospective, not

---

[14]    Levin v. Com. Energy, Inc., 560 U.S. 413, 427 (2010) ("On
finding unlawful discrimination, courts may attempt, within the
bounds of their institutional competence, to implement what the
legislature would have willed had it been apprised of the
constitutional infirmity.") (citing Heckler v. Mathews, 465 U.S.
728, 729 (1984)).

[15]    Siegel, 142 S. Ct. at 1777 (explaining the history of the
2017 Amendment: "In 2017, concerned with a shortfall in the UST
Fund, Congress enacted a temporary, but significant, increase in
the fee rates applicable to large Chapter 11 cases.  See Pub. L.
115-72, Div. B, 131 Stat. 1229 (2017 Act).  The increase was set
to take effect only if the UST Fund balance dropped below $200
million as of September 30 of the most recent fiscal year.  If
that condition was met, the increase applied on a quarterly basis
to any debtors with a disbursement of $1 million or more during
that quarter, regardless of whether their case was newly filed or
already pending when the increase took effect.  For those
debtors, the maximum fee was increased from $30,000 a quarter to
$250,000 a quarter.  § 1004(a), id., at 1232.  The statute
provided that the fee raise would become effective in the first
quarter of 2018 and would last only through 2022.").

[16]    See Pub. L. 116-325, 134 Stat. 5086  § 3(d)(2), amending 28
U.S.C. § 1930(a)(7) to provide, effective January 12, 2021, that
the Judicial Council "shall require the debtor in a [BA] case
under chapter 11 of title 11 to pay fees equal to those imposed
by paragraph (6) of this subsection [on debtors in UST
Districts]."

retrospective, relief is the appropriate remedy for the uniformity violation of the U.S. Constitution.

The Liquidation Trustee responds that the prospective relief in the 2021 Amendment has not afforded it any remedy for the unequal treatment it suffered by paying almost $1 million in excess fees between 2018 and 2021 that similarly situated debtors in the BA Districts did not have to pay.

The Eleventh Circuit has already considered and rejected the UST's argument in a similar case.[17]  While it acknowledged that Congressional intent is important in formulating a remedy for a constitutional violation and that Congress had indicated its preference for a prospective remedy, the Eleventh Circuit nonetheless held that a refund was the appropriate remedy.[18]  It reasoned that, because the 2021 Amendment did not retroactively apply the increased fees to BA District debtors, Congress had failed to provide a remedy to the UST District debtors who had paid that increased fee.[19]

The Court agrees with the reasoning of the Eleventh Circuit. The Supreme Court has held that a party "who has been subjected to [discrimination] through favoring others in violation of

---

[17]   U.S. Tr. Region 21 v. Bast Amron LLP (In re Mosaic Mgmt. Grp., Inc.), 71 F.4th 1341 (11th Cir. 2023).

[18]   Id. at 1351.

[19]   Id.

federal law cannot be required himself to assume the burden of seeking an increase of the taxes which others should have paid" or be remitted to "the necessity of awaiting such action by the state officials upon their own initiative."[20]  Similarly here, the estates are not required to seek action from Congress or the Judicial Conference to require the BA District debtors to pay the increased fees they should have.  This is so especially in light of the fact that Congress expressly failed to do so but instead "remedied" the unequal treatment in fees assessed on chapter 11 debtors in UST and BA Districts by providing only prospective relief.[21]

Numerous other courts have addressed this same issue and so far have unanimously decided against the position of the UST, ruling that a refund of excess fees is due to debtors in UST Districts.[22]

_____

[20]    Iowa-Des Moines Nat'l Bank v. Bennett, 284 U.S. 239, 247 (1931); see also Reich v. Collins, 513 U.S. 111 (1994) (holding that a refund to taxpayer was mandated for equal treatment violation).

[21]    Pub. L. 116-325, 134 Stat. 5086 § 3(d)(2) (effective January 12, 2021).

[22]    See USA Sales, Inc. v. Office of the U.S. Tr., 76 F.4th 1248, 1255 (9th Cir. 2023) (concluding that the debtors were entitled to a refund of the excess fees paid by them during the non-uniform period of statutory rates in violation of the uniformity requirement of the Bankruptcy Clause); In re John Q. Hammons Fall 2006, LLC, No. 20 3203, 2022 WL 3354682, at *1 (10th Cir. Aug. 15, 2022), reinstating 15 F.4th 1011, 1025-26 (10th Cir. 2021) (ordering a refund of excessive quarterly fees paid); Clinton Nurseries, Inc. v. Harrington (In re Clinton Nurseries,

On remand from the Supreme Court's <u>Siegel</u> decision, the Bankruptcy Court noted that the <u>Sessions</u> and <u>Barr</u> cases cited by the Defendants (in support of their argument that a refund is not necessary) are distinguishable because they did not involve any monetary assessment, so a refund would not have remedied the violation in those cases.[23]  This Court agrees and concludes that the prospective application of equal fee requirements to the BA Districts does not remedy the harm suffered by these estates which had to pay greater fees than similarly situated BA District debtors between January 2018 and January 2021.

      2.    <u>Retroactive Payments by BA District Debtors</u>

The Defendants argue nonetheless that, if prospective relief is not enough, the correct remedy is not a refund to debtors in UST Districts but to require debtors in the BA Districts to pay the increased fee retroactively to the effective date of the 2017 Amendment.

The Court disagrees with the Defendants.  Their argument has already been rejected by the Ninth and Eleventh Circuits which

---

Inc.), 53 F.4th 15, 29 (2d Cir. 2022) (reversing judgment of the bankruptcy court and directing the issuance of a refund of the excess quarterly fees paid); <u>Pitta v. Vara (In re VG Liquidation, Inc.)</u>, Nos. 18-11120 (JTD), 22-50416 (JTD), 2023 WL 3560414, at *7 (Bankr. D. Del. May 18, 2023) (holding that a refund of the excess quarterly fees paid by the estate is the appropriate relief).

[23]   <u>Siegel v. U.S. Tr. Program (In re Circuit City Stores, Inc.)</u>, Nos. 08-35653 (KRH), 19-03091 (KRH), 2022 WL 17722849, at *3 (Bankr. E.D. Va. Dec. 15, 2022).

concluded that it was not an appropriate remedy because those
Courts did not have jurisdiction to enter such an order against
BA District debtors (or the Bankruptcy Administrators), none of
whom were parties in the cases before them.[24]  This Court
similarly does not have the jurisdiction or authority to provide
that remedy.

        3.    <u>Timing of Challenge to Excessive Fees</u>

The Defendants also argue that, because the estates did not
withhold payment of the fees, they cannot now seek a refund.[25]
They argue that instead, the Debtors and the Liquidating Trustee
paid the increased fees without protest and only later sought to
challenge them after the statute of limitations for the avoidance
and recovery of those fees had expired.

The Liquidating Trustee argues that the estates did not have
an adequate pre-deprivation remedy.  The estates could not refuse

---

[24]    <u>USA Sales</u>, 76 F.4th at 1255 (concluding that the Ninth
Circuit did not have power to order Bankruptcy Administrators in
BA Districts in the Fourth and Eleventh Circuits to collect fees
from debtors who may have closed their cases long ago); <u>Mosaic
Mgmt.</u>, 71 F.4th at 1348 (concluding that it did not have
jurisdiction over debtors in BA Districts or over Bankruptcy
Administrators, even though some were in the Circuit, because
none were a party to the appeal before it).

[25]    <u>See, e.g.</u>, <u>Ry. Labor Exec.s' Assn. v. Gibbons</u>, 455 U.S. 457,
462 & 465 (1982) (estate trustee sought to enjoin application of
statutory railway act fees, contending they violated the
uniformity requirement of the Bankruptcy Clause); <u>Cranberry
Growers Coop. v. Layng</u>, 930 F.3d 844, 847 (7th Cir. 2019) (debtor
failed to pay quarterly fees on payments made directly to its
lenders by its customers and filed an objection after receiving a
notice of unpaid fees).

to pay the UST fees without risking conversion or dismissal of
their cases.[26]

The Court agrees with the Liquidating Trustee that the
estates effectively had no pre-deprivation remedy for the
assessment of the increased quarterly fees.  As Judge Huennekens
explained in Circuit City:

> The Bankruptcy Code provides that a court "shall"
> convert the case to Chapter 7 or dismiss the case
> altogether for failure to pay the Quarterly U.S.
> Trustee Fees.  11 U.S.C. § 1112(b)(1), (b)(4)(K).  Had
> the Trustee refused to pay the Unconstitutional
> Overpayment, the Trustee would have run the risk of
> dismissal or conversion — either of which would have
> jeopardized over a decade of carefully negotiated
> restructuring and repayments to creditors.  As such,
> the Trustee did not have a meaningful pre-deprivation
> opportunity to challenge the constitutionality [of] the
> Unconstitutional Overpayment.[27]

Furthermore, the Ninth and the Eleventh Circuits, in
addressing this issue, noted that even where an adequate pre-
deprivation process is available, a party that has suffered
unequal treatment may nonetheless seek a refund for the harm it

---

[26]   See 11 U.S.C. § 1112(b)(1) & (4)(K) ("the court shall
convert . . . or dismiss a case under [chapter 11] for cause
[including] failure to pay any fees or charges"); see also
Circuit City, 2022 WL 17722849, at *3.

[27]   Circuit City, 2022 WL 17722849, at *5; see also Pitta, 2023
WL 3560414 at *6.  Cf. Atchison, T. & S.F. Ry. Co. v. O'Connor,
223 U.S. 280, 286 (1912) (finding a payment was made under duress
where the consequences of non-payment were significant and
concluding that the plaintiff was not required to take that risk
by contesting the validity of the statute prior to payment).

suffered.[28]

Accordingly, the Court concludes that the only appropriate action the Debtors or Liquidation Trustee could have taken was to comply with the increased fees and seek a refund after the fact. Therefore, like the other courts to address this issue, the Court concludes that the estates are entitled to a refund of the excess quarterly fees paid by it as a result of the 2017 Amendment.[29]

4.    Appropriate Period of Time for Refund

The Defendants contend that, to the extent a refund is required, it should not include the increased amounts the estates

---

[28]    See, e.g., USA Sales, 76 F.4th at 1254-55 (concluding that a refund was appropriate because, while the debtor could have challenged the increased fee before paying, it was reasonable for the debtor to pay the quarterly fees to avoid liquidation or dismissal and to challenge them only later); Mosaic Mgmt., 71 F.4th at 1350 (concluding that even if the debtors could have challenged the excess fees before payment, they were not required to do so and could instead seek a refund afterwards); see also Reich v. Collins, 513 U.S. 111 (1994) (holding that a refund was mandated because the taxpayer was not required to engage in the pre-deprivation process where the state statute also provided for a post-deprivation right to a refund).

[29]    The Defendants also argued that a refund was not warranted under section 549 of the Code because the Liquidating Trustee's action was filed beyond the statute of limitations and because the fees were authorized to be paid.  11 U.S.C. § 549(d) ("[a]n action or proceeding under this section may not be commenced after the earlier of . . . (1) two years after the date of the transfer sought to be avoided; or (2) the time the case is closed or dismissed."); see also 11 U.S.C. § 1129(a)(12).  Because the Court concludes that a refund is the only possible remedy for the deprivation of the estates' entitlement to equal protection of the bankruptcy laws, it finds that the Liquidation Trustee is not required to avail itself of section 549 to obtain that relief. Therefore, any expiration of the statute of limitations under that section is not relevant.

paid during the quarters that the BA Districts violated the
uniformity requirement by failing to comply with Judicial
Conference policy at the time.  The Defendants assert that this
applies to the first three quarters of 2018 when the 2017
Amendment required increased fees from the UST District debtors
and the 2001 Judicial Conference Standing Order[30] required that
BA District debtors pay fees equal to the fees in the UST
Districts.

The Court is not convinced by this argument.  First, debtors
in the BA Districts were not, in fact, assessed fees equal to the
fees charged to the UST District debtors under the 2017 Amendment
during that period.[31]  Second, the Judicial Conference decided in
September 2018 that the 2017 fee increase would only apply
prospectively to "cases filed on or after" October 1, 2018.[32]
That action cemented the disparity in treatment between the UST
District debtors and the BA District debtors.  Furthermore, the

---

[30]    The Judicial Conference's 2001 order imposed quarterly fees
in BA Districts "in the amounts specified in 28 U.S.C. § 1930, as
those amounts may be amended from time to time."  2001 JCUS Order
46.

[31]    Siegel, 142 S. Ct. at 1777 ("Despite the Judicial
Conference's standing order, and unlike with previous fee
increases, the six districts in the two States participating in
the [Bankruptcy] Administrator Program did not immediately adopt
the 2017 fee increase.").

[32]    Judicial Conference of the U.S., Report of the Proceedings
of the Judicial Conference of the United States 11-12 (Sept. 13,
2018), https://www.uscourts.gov/sites/default/files/2018-
09_proceedings.pdf.

Supreme Court held in Siegel that it was the action of Congress

(which did not mandate that the 2017 fee increase apply in all

Districts until the 2021 Amendment), not the act of the Judicial

Conference, that created the violation of the uniformity

requirement.[33]

Accordingly, the Court holds that the refund should apply to

all the quarters in which fees paid by these estates exceeded the

fees paid by similarly situated BA District debtors.

5.    Requirement of a Final Judgment

The Defendants finally argue that Congress authorized the

payment of judgments against the United States only upon entry of

a final order.[34]    The Liquidation Trustee acknowledges this.

Therefore, the Court will enter judgment in favor of the

Liquidating Trustee which requires payment only once its order

becomes final and non-appealable.[35]

---

[33]    Siegel, 142 S. Ct. at 1782 n.2.

[34]    See 28 U.S.C. § 2414; see also Dixon v. United States, 900
F.3d 1257, 1268 (11th Cir. 2018) ("[t]he United States cannot be
required to pay [a] money judgment against it until it has
exhausted all appeals it decides to take.").

[35]    The Court also makes no finding as to the amount of the fee
due.  While the Liquidating Trustee asserted in its Motion that
the amount of excess fees due was $971,000, the Defendants
suggested that their analysis shows that an additional $250,000
may be due.  (Adv. D.I. 10 at ¶ 17; Adv. D.I. 17 at ¶ 2.)  Thus,
the Court will leave it to the parties to reconcile the numbers
and advise the Court under certification of counsel of the agreed
amount of the judgment that should be entered.

IV.    CONCLUSION

For the foregoing reasons, the Court will grant the Liquidation Trustee's Motion for Summary Judgment and deny the Defendants' Motion for Summary Judgment.

An appropriate order is attached.

Dated: September 14, 2023                    BY THE COURT:

Mary F. Walrath
United States Bankruptcy Judge